WILLMARTH *vs.* CRAWFORD.

An action of *debt* on a promissory note may be maintained by an *endorsee* against the *maker*.

A note given to an *incorporated company* for *stock* is valid in the hands of an *endorsee* without notice, notwithstanding the statutory provision forbidding directors of such companies to receive a note or other evidence of debt in payment of any installment *actually called* in and *required to be paid,* where it is not *affirmatively shewn* that the note was given for stock called in and required to be paid.

ERROR from the New-York common pleas. Crawford sued Willmarth *in an action of debt,* as the *endorsee* of a promisory note made by Willmarth, payable to the order of the *Harlœm Canal Company.* The note, before its maturity, was endorsed by the payees to the plaintiff, in consideration of a debt owing to him by the payees. The plaintiff admitted that the note was originally given for the *stock of the company,* but he denied that he was privy to, or knew the fact when the note was transferred to him. The plaintiff recovered in the common pleas, and the defendant sued out a writ of error.

*D. Graham,* for the plaintiff in error, insisted, *first,* that an *endorsee* cannot maintain an action of *debt* on a promissory note against the maker ; and *secondly,* that the note was *void* in its creation, and consequently invalid in the hands of the endorsee as well as of the original payees. He contended, in reference to the well settled principles in relation to the powers of corporations, that the *Harlœm Canal Company* had no right to take a note for stock from a stockholder, and that the taking of such note was a violation of the provision of the act to prevent fraudulent bankruptcies by incorporated companies, forbidding directors of such companies to receive any note or other evidence of debt in payment of any installment actually called in and required to be paid, or any part thereof, due or to become due on any stock in such company. *Laws of 1825, p.* 448, § 2.

*C. F. & J. O. Grim,* contra.

*By the Court,* NELSON, J.   The provisions of the charter incorporating the Harlæm Canal Company clearly contemplate the existence of debts due to and from the company in the course of the execution of the purposes for which it was granted, and unless there is some express restriction, either in the charter or some other act of the legislature, as to the nature of the evidence of the debts due to or from them, or securities to be taken or given by them, they have in this respect the same powers that belong to individuals.   Corporations, while acting within the scope of their authority under the act creating them, that is in the execution of the powers granted to or duties imposed upon them by the charter, are to this extent and end like natural persons ; and this view may frequently determine the lawfulness or unlawfulness of their acts, and the remedies which exist for and against them.   Indeed, the whole effect of a charter oftentimes is only to invest the individuals composing the corporation in the aggregate with powers in reference to a specified object, which each member in his natural capacity already possesses ; the charter in question is an instance of the kind.   There are many others where privileges are granted not belonging to individuals.   The tendency of modern decisions has been to assimilate the actions of corporate bodies, within their sphere, to those of natural persons, and to determine their rights and their liabilities, and apply remedies for and against them, upon principles applicable to the latter.

It is true that the eighth section of the act incorporating this company expressly prohibits the company from issuing " *any bond, note, bill of credit or other obligation,*" but this exclusion is qualified so as not to extend to " *any contract necessary for the purpose of constructing, repairing and conducting any of the works by this act contemplated.*"   When acting within the limits of the statute and in furtherance of its purposes, no such inhibition exists.   By the 13th section, they are not to exercise powers not expressly granted, or not indispensably necessary to effect the object of the incorporation ; but they are authorized to sell or lease their property, and they therefore may take a note or any other security ; they must construct their canal and purchase land, and may purchase, build or hire houses, factories, ware-

houses, boats, &c. and may therefore give their notes or any other security for the same, otherwise they must make immediate payment for every thing contracted for or purchased, and must receive ready pay for every thing hired or sold by them. This cannot be pretended.

If the company are authorized to take or give notes generally in the execution of their powers under the act, though they may not have been authorized to take the note in question, yet, as the plaintiff received it before due and for a good consideration, without notice of the nature of the consideration for which it was originally given, and which it is contended vitiates it, he would be entitled to recover. Conceding it to be taken without authority, it is valid in the hands of a *bona fide* holder. 6 *Wendell*, 615. But I am of opinion the note would be valid, even in the hands of the company.

It is said the act to prevent fraudulent bankruptcies by incorporated companies avoids the note. That section, among other things, forbids the directors receiving " any note or other evidence of debt in payment of any installment *actually called in* and *required to be paid*, or *any part thereof*, due or to become due on any stock in said company." The case shews that the note in question was taken for stock of the company, but whether for stock *called in* and *required to be paid*, no where appears. The 5th section of the charter authorized the directors to call in from the stockholders the monies subscribed *from time to time*, and *in such proportions* as they should see fit. For any thing appearing to the contrary in the case, this note may have been given for stock *not called in* or *required to be paid*, and then it is unexceptionable. We will not *presume* an unlawful act on the part of the directors, but the contrary, if their act may be consistent with their duty.

The next question is whether debt will lie by the endorsee against the maker of a promissory note. The case of *Pierce* v. *Crafts*, 12 *Johns. R.* 90, decides that *indebitatus assumpsit* would lie in this case, and it is a well settled maxim that where this action lies, debt may be brought. 1 *Salk.* 23. *Doug.* 1. 1 *Ld. Raym.* 69. The case of *Pierce* v. *Crafts*, no doubt, virtually settles the question raised here. The argu-

ment urged there by the counsel for the defendant against the action is similar to that urged here, and founded upon the same authorities. The court put the decision upon the ground that since the statute making promissory notes negotiable, the legal operation and effect of the transfer is, that the money due upon the note to the original payee is due from the maker to the assignee or holder, and that in judgment of law there is privity of contract between the maker and endorsee or holder by the terms of the note and the operation of the statute ; it is to be paid to the payee, or any person to whom it may be transferred. These positions seem to me to be sound and incontrovertible, and they answer the whole of the reasoning and authorities which have as yet prevented the courts in England from going this length. The argument against allowing *indebitatus assumpsit* or debt to be brought upon bills of exchange or promissory notes, except between the immediate parties between whom a consideration passed, is, that there is no privity of contract existing between the parties, and no debt due or consideration passing between them, and that the liability depends upon the custom of merchants, independently of contract or consideration. The courts in England, in the time of Lord Holt, who considered bills of exchange and promissory notes, especially the latter, with their negotiable properties, innovations upon the common law, began by holding that the action of *indebitatus assumpsit* or debt could not be sustained upon them. *Welsh* v. *Craig*, 1 *Str.* 630. 8 *Mod.* 373. By a gradual relaxation of the rule as cases have arisen, these actions will now be sustained in these courts by the payee against the maker, on a note expressed to be for value received by the endorsee against the endorser, and on a bill by the payee against the drawer, and drawee against the acceptor, expressed to be for value received, and endorsee against endorser. 1 *Salk.* 125, *n. Chitty's ed. of* 1830, 427, *and cases there cited.* 8 *Com. L. R.* 179. In these cases, however, the soundness of the above distinctions is still attempted to be sustained, or rather apparently acquiesced in, and some refinement is necessary to reconcile the one with the other.

The reasons why these actions by the payee against the acceptor of a bill of exchange will not lie are in some respects peculiar. They are, first, because there is no privity, and second, the acceptance, which binds only by the custom of merchants, is a collateral engagement which creates no debt or duty, and is like the promise of a stranger to pay the debt of a third person on forbearance, where the drawer still owes the debt. The latter reason has no application to this case, for although after endorsement a promissory note resembles a bill of exchange, the endorser being the drawer and the maker the acceptor, yet, as is said by Lord Eldon in *Bishop* v. *Young*, 2 *N. R.* 83, as to the question who owes the debt, the resemblance does not exist. The maker still owes the debt, and is primarily and finally responsible for it. It cannot be said that the engagement of the defendant is collateral ; it is to pay his own debt, and the action by the plaintiff is to enforce its payment. The only objection, then, is want of privity or consideration passing directly between the endorsee and maker, so as to create a debt due from the latter to the former. The true answer is the one given in *Pierce* v. *Crafts*, that by the terms of the note and the operation of the statute, a privity or contract does exist, which attaches between the maker and endorsee immediately on the transfer. There exists a debt due from the maker to the holder by operation of law upon the contract, to recover which debt or *indebitatus assumpsit* will lie.

The theory in relation to a promissory note is, that the drawer has received a sum of money from the payee and promises in consideration therefor, to repay it to him or to a person whom he may designate at a future day. The endorsement by the payee assigns the money or debt to the endorsee, and he may recover it in his own name. It has been decided that where money is delivered to one to pay to a third person, the latter may sustain an action of debt to recover it. *Cro. Jac.* 687. *Yelv.* 23. See also 1 *Bos. & Pul.* 296 ; 1 *Johns. Cas.* 205 ; 12 *Johns. R.* 276. The receipt of the money is a sufficient consideration to raise an implied promise, or

sustain an express promise to the person entitled to the fund. Whenever the common law or custom raises a debt or duty, this action may be brought. 1 *Chitty's Pl.* 101, 2.

Judgment affirmed, with single costs.