George v. Van Horn.

BROOME GENERAL TERM, October, 1850. *Shankland, Gray, Mason, and Monson,* Justices.

## GEORGE *vs.* VAN HORN.

An action on the case can not be maintained by a mother, after the death of her husband, for the seduction of her daughter in his lifetime, where it appears that at the time of the seduction the daughter was over twenty-one years of age, and was residing with her brother, at his residence, and taking charge of his family; although she shortly afterwards returned to her mother's house and remained there till after her confinement, and was taken care of by her.

The executors or administrators of a deceased father, or master, can not maintain an action for the seduction of his daughter, or servant, in his lifetime.

THIS was an action brought by a mother, for the seduction of her daughter Eliza George, and was tried at the Tompkins court, in September, 1849. The daughter was over thirty years of age at the time of the illicit connection which resulted in the birth of a child, in May, 1849. At the time of the illicit intercourse her father was alive, but he died a few months after, and before the birth of the child. The daughter had generally resided at home, but at the time of the seduction she was residing for a

short time with her brother, at his residence in the same town, taking charge of his family ; and shortly afterwards, she returned to her mother's residence and remained with her till after her confinement, and was taken care of by her.  In April, before the birth of the child, complaint was made against the defendant, as the putative father, and an order of filiation, &c. made against him, which he paid.  On her cross-examination Eliza George testified that her mother charged her for her board while she was sick.

The defendant's counsel, on the plaintiff's resting her cause, and at the close of the trial, made the proper objections to a recovery, to raise the question of the plaintiff's right to maintain the action ; which objections were overruled, and the defendant excepted.  A verdict for $300 was obtained by the plaintiff, and the defendant now moved for a new trial.

*S. Mack*, for the defendant.

*Ferris & Cushing*, for the plaintiff.

*By the Court*, SHANKLAND, J.  The father of Eliza George being alive at the time of her seduction, it is urged by the defendant's counsel that the mother can not maintain this action ; but that if any one can maintain a suit, under the circumstances of this case, it must be the legal representatives of the deceased father ; or the brother, in whose house and service she was, at the time of the seduction.

The executors, or administrators of a deceased father, or master, can not maintain this action for the seduction of his daughter and servant in his lifetime.  As well might an action lie, in their names, for crim. con. with his wife.  They can not represent his aggravated feelings, and the personal disgrace heaped upon him, by such events.  These causes of action are purely personal, and like assaults, libel and slander, die with the person.

Whether the brother can maintain this action, it is unnecessary to decide in this case, but I am of opinion that the mother can not, on the facts disclosed by the evidence.  At the time of

George *v.* Van Horn.

the seduction, the daughter was upwards of twenty-one years of age, and in the actual service of another person, and the father was then alive. The relation of master and servant did not exist, either actually or by construction.

The case of *Nickleson* v. *Stryker*, (10 *John.* 120,) is an authority in point, against the maintenance of this action by the father, if he had survived, and instituted it. In that case the daughter was twenty-nine, and lived with her father until a short time before her misfortune, but was absent from home at the time of her seduction, in the service of one Layton. She returned home, however, before confinement, and her father paid the expenses of her sickness. The court decided that the action would not lie, and laid down the true rule which should govern in determining the question. They say, " The rule is settled, that if the daughter be of age, she must be in her father's service, so as to constitute, in law and in fact, the relation of master and servant, in order to entitle her father to bring a suit for seducing her. If she be under age, she is presumed to be under his control and protection, so as to entitle him to the action, whether she actually resides with him or not." The same doctrine was repeated, and applied in the cases of *Thompson* v. *Millar*, (1 *Wend.* 447 ;) *Moran* v. *Dawes*, (4 *Cowen*, 412 ;) *Sargent* v. *Denison*, (5 *Id.* 106 ;) *Bartley* v. *Richtmyer*, (2 *Barb. Sup. Court Rep*, 182 ;) and *Ingersoll* v. *Jones*, (5 *Id.* 661.) In the two last cases the *seduced* were infants, and the plaintiffs stood in the relation of parents to them ; and if the court in deciding those cases intended to depart from the rule laid down in *Nickleson* v. *Stryker*, it was unnecessary to the decision of those cases, and therefore *obiter.*

If in this case it had appeared that in consequence of the defendant's conduct a charge had been brought upon the plaintiff as the mother of Eliza, under the provisions of the act obliging parents of sufficient ability to support their indigent offspring, (1 *R. S.* 623, § 1,) an action might perhaps be sustained, although the seduction took place in the life of the father, and while the daughter was in the actual service of another, and was also of full age. Then, the surviving mother would have the charge brought upon her in consequence of her parental relation ; and

the damage consequent upon the defendant's illegal act would constitute a good cause of action. But it does not appear that the plaintiff was liable, under the act above referred to, or that the overseers of the poor of the town attempted to charge her with the daughter's support; but on the contrary it does appear that they proceeded against the defendant for the support of the child, and the expenses of the mother, which were paid by him. Admitting that when the seduction takes place in the life of the father, the mother can maintain the action, in case of his death before the birth of the child, yet it must be under such circumstances as would have enabled the father to maintain the action, if he had survived. In this case we have seen the father could not. But I have great doubts whether the mother can in any case maintain the action, when the seduction was accomplished during the lifetime of the father, unless a charge has been brought upon her, in consequence of her parental relation under the provisions of the act above cited.

In *Logan* v. *Murray*, (6 *Serg. & Rawle*, 175,) it appeared that the daughter was debauched and became pregnant while living with her father, and after his death she continued to reside with her mother, by whom she and her child were supported. It was held that the mother could not sustain the action; and the court say, " That whatever damage the mother sustained arose from an act committed in the father's lifetime—the daughter was in his service. On his death, when the mother became the mistress of the house, the mischief was done; the daughter came into her service pregnant. If the alledged trespass gave her no cause of action, the consequence can not." In *Stiles* v. *Tilford*, (10 *Wend*. 338,) it was held that an action on the case could be maintained by the father, after pregnancy of the daughter and before the birth of the child, and that the plaintiff in such action might be allowed to recover for loss of services and expenses incurred after action brought, and before the trial. It was put upon the ground that the cause of action had accrued, before suit brought, and that the loss of service, and expenses accruing after action commenced, were in aggravation of damages. If this is the true doctrine, it would seem to follow that where a cause of

George *v.* Van Horn.

action of this nature has accrued to the father in his lifetime, it dies with him, and no other person can maintain an action for that cause after his death, although they happen to sustain *consequential* damages from the same cause *after* his death. (*See also Hewitt* v. *Prime*, 21 *Wend.* 79.)

The counsel for the plaintiff in this case contend that it is not material who was entitled to the services of the seduced, at the time of the seduction, when the form of the action is *case*, and not *trespass ;* and that the true inquiry is, upon whom has the *consequential* injury fallen, viz. the expenses of her confinement, and the loss of her services ? If the tests above proposed were admitted to be the true ones, they would not enable the plaintiff to maintain this action ; because the daughter owed no services to the plaintiff, either in law or by contract, nor did she bear the expenses of the lying-in.

But the tests contended for can not be the true ones ; for if they are, these consequences will follow : a pregnant female, by entering into the employ of another person, and being sick from that cause, in his service, will confer this right of action upon him. So too, if a female who has been seduced should marry a husband afterwards, and then be delivered of a child, the husband could maintain the action, by reason of this *ex post facto* relation, and the consequent damage. (*59 Eng. C. L. R.* 725.)

So far as principles can be deduced from adjudged cases, they hold that the relation of master and servant must exist between the plaintiff and the seduced, at the time of the seduction, and that there must be a loss of service to the plaintiff, or a charge brought upon him in consequence of the seduction. Slight evidence will be sufficient to establish the relation, and the loss of service ; because courts and juries are ready and eager to punish the violator of female chastity, and the peace of families ; but it is better that this, or any other offense, should go unpunished, until legislative interference, than that courts shall violate all precedents, and usurp the law-making power, in order to remedy a real or fancied hardship.

The judgment rendered at the circuit should be reversed, and a new trial awarded, with costs to abide the event.