### KNIGHT *vs.* WILCOX.

In an action for seduction, proof of pregnancy and the birth of a child is not essential. It is sufficient if the illness of the daughter, whereby she was unable to labor, was produced by shame for the seduction.

If the illness and consequent inability to serve, are produced by a sense of shame at the exposure of the seduction, and would not have occurred but for the exposure, this is such a loss of service as will sustain the action.

In an action for seduction it is proper for the judge to charge that on the question of damages the jury may take into view the wounded feelings of the plaintiff, and may not only recompense him, but punish the defendant, according to the aggravation of his offense.

A father may recover vindictive damages for the seduction of his daughter.

A verdict for $650, in an action for seduction, is not so excessive as to indicate passion, partiality, prejudice or corruption on the part of the jury.

MOTION by the defendant for a new trial. The action was brought for the seduction of the plaintiff's daughter, and was twice tried. On the first trial the plaintiff was nonsuited, and a new trial was granted. (*See* 15 *Barb.* 279.) On the second trial, at the Monroe circuit in October, 1853, the proof was similar to that introduced on the first trial. There being no evidence that pregnancy ensued, the defendant moved for a nonsuit, on the ground that the plaintiff had not proved a technical loss of service. This motion was overruled, and the defendant excepted. The judge charged the jury that they were to say

Knight *v.* Wilcox.

whether any actual loss of service had been sustained; that in coming to a conclusion on that subject they were not confined to immediate, direct physical injury to the person of the daughter, so as to render her incapable of performing the same amount of service as she otherwise would. That it was sufficient if, as was claimed, the daughter, upon the fact of her sin becoming known, in consequence of mortification, remorse, or sense of shame, arising therefrom, became sick and unable to render the service which she was accustomed to, and otherwise would have performed. That on the subject of damages, the jury were not confined to the actual pecuniary damage sustained by the plaintiff, but were at liberty to take into view the wounded feelings of the father, arising from the defilement of his daughter, the disgrace of his family, and the corruption of his child's virtue, as well as the defendant's conduct. That it was not only competent to recompense the plaintiff, so far as the verdict of a jury might do it, but to punish the defendant according to the aggravation of his offense. To so much of the charge as instructed the jury that there was sufficient proof of loss of service, provided the jury believed, from the evidence, that the plaintiff's daughter, upon her sin becoming known, became sick and unable to perform the service she was accustomed to, and otherwise would have performed, in consequence of mortification, remorse or sense of shame, the counsel for the defendant excepted; and to so much of said charge as advised the jury that they had a right, by their verdict, to compensate the plaintiff for injury to his feelings, or to punish the defendant for the wrong committed by him, the defendant's counsel also excepted. The defendant's counsel requested the judge to charge the jury that one of two things must be proved, to maintain the action; either 1st, that the plaintiff had sustained some pecuniary damages by the loss of the service of his child, resulting directly, and as a consequence, from the act complained of; or 2d, that the act complained of had directly impaired the ability of the child to render services when required. The judge declined to charge on the subject of such request, otherwise than as he had already charged. To which refusal to charge, the counsel for the defendant excepted. Also the defend-

ant's counsel requested the judge to charge, that if the jury should find that the alleged illness of the plaintiff's child resulted wholly from a sense of shame at the exposure of her crime, it was not such a loss of service as is required to sustain the action by the father. The judge declined so to charge, to which refusal the counsel also excepted. Also the defendant's counsel requested the court to charge the jury, that vindictive damages could not be recovered in an action for loss of services, which the said court declined to do; to which refusal the defendant's counsel excepted. Also the defendant's counsel requested the court to charge the jury, that if the jury believed that the parents' negligence in the education of their daughter had contributed to the wrong complained of, the action could not be sustained. Which the court declined to do, but did charge that such neglect, if found, should at least be operative to reduce the damages. To which refusal to charge, the defendant's counsel excepted. The defendant's counsel also requested the court to charge the jury, that if they believed that the parents had received into their family, as a guest, a man of lewd habits and lewd conversation, and had for a long time treated him with confidence, and permitted him to associate with their daughter, and that such intimacy had so far polluted her moral sense as to weaken her power of resistance, the jury should regard such conduct as contributing to the injury complained of, and should therefore find in favor of the defendant, or, at least, that the same should be considered as a circumstance tending to the reduction of damages. The court refused to charge according to this proposition, as it did not include, in terms, the knowledge of the plaintiff as to such character; but the court did charge the jury that if they believed that such intimacy did exist, to the knowledge of the plaintiff, and if he had knowledge of such person's bad character, it should be received by them in mitigation of damages, and in mitigation only. To which charge and refusal to charge, the defendant's counsel objected. The jury found a verdict against the defendant for $650.

*E. A. Hopkins,* for the plaintiff.   I. The objection of the defendant to the question whether the wrong, on the matter becom-

Knight *v.* Wilcox.

ing known, in any way affected the daughter's health, and if so, why, was not well taken. The objection was, that the question pointed to the effect of the exposure, not of the act itself. Such is not the import of the question. The question was whether, at a certain period, the wrong itself affected her health, and if so, how? Not if the exposure affected her health. Nor does the question seek her opinion, unless an expression of her sensations and sufferings be matter of opinion. The anguish or grief that destroys the appetite, and drives away sleep, should be matter of knowledge. If a human being knows any thing, he should know the subject matter that works at such a rate on the heart or on the brain. If he cannot delineate the philosophy of the operation, he must be conscious of the fact. The *answer* to this question detailed, not opinions, but facts.

II. The defendant's objection to the plaintiff's offer to show that the defendant had said his father was rich, was not well taken. Even if the offer was improper, still no proof was given to sustain the offer, and therefore no wrong or injury from it was sustained by the defendant. But the offer itself was proper.

III. The defendant's offer to prove that subsequent to the seduction one Miles offered to marry the daughter, was manifestly improper.

IV. The charge to the jury was correct. It was based upon the decision of this court, in this action, made at general term, and is according to such decision. It corresponds to the authorities therein cited. (*Manvell* v. *Thomson*, 2 *Car. & Payne*, 303. *Van Horn* v. *Freeman*, 1 *Halsted's Rep.* 322. 3 *Chitty's Bl.* 143, *n.* 30. *Hewit* v. *Prime*, 21 *Wend.* 79. *Ford* v. *Monroe*, 20 *Id.* 210.) The doctrine of the former decision herein must be the correct doctrine. If the loss of services be occasioned by the prostitution, it cannot be material how—whether the criminal intercourse be attended by conception, and followed by pregnancy and child-birth, and thereby produce sickness and inability to do service, or whether it is attended by detection, and followed by exposure and mortification, and thereby produces sickness and inability to do service. In the one case, the misdeed acts upon the fallopian tubes; in the other,

upon the nerves. But if it operates in either way, the loss of service is the direct and natural consequence of the wrong. Nor can it matter whether the sickness is produced by *remorse* or by *shame*—in other words, whether it is the painful sensation excited by a consciousness of guilt, or by a consciousness of having done or suffered something which blasts the reputation and brings degradation, ignominy, reproach, derision or contempt—whether the soul dwells on it in the light shed upon it by an awakened conscience alone, or in the light in which it is viewed by one's parents and friends, and by society. Now it is true that the damage must be the natural and necessary consequence of the wrongful act. But by "necessary," is not meant that the wrong could not be committed except the damage follow. It means that when the wrong is committed, and the damage follows, such damage is attributable only to the wrong; that such is the connection between the damage as a consequent, and the wrong as an antecedent, as to make the existing of the antecedent *necessary to the existing* of the consequent; not that the antecedent must necessarily produce the consequent. For example, where pregnancy is a consequent, it makes the existing of carnal connection necessary as an antecedent; yet the carnal connection may exist without producing such consequent. The word "natural," is only used in contradistinction to the idea of remote, unforseen, contingent. It means nothing more than that such is the relation between the antecedent and the consequent—that it is neither unlikely nor surprising. It is not unnatural that the latter should result from the former.

Now the remorse or shame attending or resulting from a seduction, often leads to suicide. Certainly it is not unnatural that it should destroy appetite and sleep, and induce illness and inability to do service. Hence the cases of *Manvell* v. *Thompson* and *Ford* v. *Monroe* are properly treated by Mr. Justice Strong, in the former decision of the case in this action, as asserting no new rule of damages, but as conforming to the law as settled on that subject.

*T. Hastings,* for the defendant. I. The judge erred in allowing the witness to answer the question: " On the matter becoming known, did the wrong in any way affect your health ; if so, how ?" The question pointed to the consequences of the exposure of the witness' sin, and not to the direct consequences of the sin itself. This was improper. It asked for the opinion of the witness upon the direct question to be passed upon by the jury, as to what was the cause of the illness. II. The learned judge also erred in admitting the testimony as to the defendant's declarations concerning his father's wealth, under the offer to prove the defendant's pecuniary circumstances. It was the mere idle boast of a boy, about his father's wealth. The offer was made in bad faith, and with the obvious intent to prejudice the jury. It was not a case for smart money, or for vindictive damages. III. The learned judge also erred in overruling the motion for a non-suit. There was no legitimate evidence of a loss of services, resulting as a consequence of the sexual act, or of the diminution of the daughter's capacity to serve. (*Crain* v. *Petrie,* 6 *Hill,* 522. 1 *Chitty's Pl.* 395, 6. 1 *Saund. Pl. and Ev.* 344. *Morris* v. *Langdale,* 2 *Bos. & Pull.* 284, 289. *Vicars* v *Wilcox,* 8 *East,* 1, 3, 4.) Giving to this testimony its utmost latitude, the illness was the mere consequence of a subsequent confession of her guilt, and that three months after the act complained of. Where is the court to stop in reaching after consequences ? But a fair construction of this testimony will show that so far from this being so, it is obvious that the illness, if any there was, was occasioned by parental and fraternal representations that the thing was to be brought into court, to compel Porter to pay for it. It is no answer to this argument, that the daughter gave it as her opinion that her illness was occasioned by the original wrong. The opinion was improperly admitted, and is not worth a moment's thought. IV. The offer to prove that Mrs. Knight, the plaintiff's wife, and the mother of the servant, knew the character of Miles to be notoriously unchaste and lewd, was improperly rejected. The intimacy of Miles with the mother and daughter, had been fully proved. It had also been proved that Miles had already undertaken to act, and had acted as one of the family advisers, in reference to this

very matter. His character was generally talked about. He was unchaste and lewd. The father and the mother constituted the joint head in the government of the family, and in the training of the children. To the mother especially, is committed the responsibility of watching over the purity of daughters, and notice to her of improper associations with the daughter should be regarded as notice to the father. Between the husband and the wife, in such matters, there is an identity of interest. She may be regarded perhaps as agent, whose knowledge would charge her principal, the husband. V. The learned judge erred in charging the jury that it was sufficient if the daughter, upon the fact of her sin becoming known, in consequence of mortification, remorse or sense of shame arising therefrom, became sick and unable to render the service which she was accustomed to render, and otherwise would have performed. This is clearly confounding the distinction between direct and remote or accidental consequences. (*Bartley* v. *Richtmyer*, 4 *Coms.* 38. *Hewit* v. *Prime*, 21 *Wend.* 79.) VI. It was also an error to charge and advise the jury that, in case they found the action made out, they had a right by their verdict to compensate the plaintiff for the injury to his feelings, and to punish the defendant for the wrong committed by him. VII. The refusal of the judge to charge the jury as requested, that it must be proved, in order to maintain the action, either, 1st. That the plaintiff had sustained some pecuniary damage, from the loss of the services of his child, resulting directly, and as a consequence, from the act complained of; or, 2d. That the act complained of directly impaired the ability of the child to render services when required, was error. VIII. The refusal of the judge to charge the jury, upon the request of the defendant's counsel, that if the jury should find that the alleged illness of the plaintiff's child, resulted wholly from a sense of shame at the exposure of her crime, it was not such a loss of service as is required to sustain the action, by the father, was also erroneous. (*Manvel* v. *Thomson*, 2 *Car. & Payne's R.* 303. 1 *Halsted's R.* 322. *Ford* v. *Monroe*, 20 *Wend.* 210.) IX. The learned judge also erred in refusing to charge the jury that vindictive damages cannot be recovered in an action for the loss of services. X. The

judge also erred in refusing to charge the jury, that if they believed the parents' negligence in the education of their daughter had contributed to the wrong complained of, the action could not be sustained. XI. It was also error not to charge the jury, as requested by the defendant's counsel, that if they believed that the parents had received into their family, as a guest, a man of lewd habits and lewd conversation, and had for a long time treated him with confidence, and permitted him to associate with their daughter, and that such intimacy had so far polluted her moral sense as to weaken her power of resistance, the jury should regard such conduct as contributing to the injury complained of, and should therefore find in favor of the defendant, or, at least, that the same should be considered as a circumstance tending to the reduction of damages. The character of Miles must have been known by observation to the plaintiff. There was constant association. Want of knowledge is no excuse. The plaintiff was bound to know the character of guests who were permitted to associate with his family on terms of intimacy. XII. The verdict is against the evidence, and should be set aside on that ground. XIII. The damages are excessive.

*By the Court*, T. R. STRONG, J. The evidence on the first trial of this case was substantially the same as on the recent trial thereof, in respect to loss of services by the plaintiff. Upon the motion to set aside the nonsuit granted on the first trial, we held, as to the point of loss of services, that pregnancy and the birth of a child were not essential to the right of action, and that it was sufficient if illness of the daughter, whereby she was unable to labor, had been produced by shame for the seduction. (15 *Barb.* 279.) In addition to the references in the opinion then delivered, in support of the first branch of this doctrine, I cite *Briggs* v. *Evans,* (5 *Iredell,* 16,) *Sedg. on Dam.* 2d ed. 543. The question now presented, in regard to loss of services, is whether, if the illness and consequent inability to serve were produced by exposure of the seduction, and would not have occurred but for the exposure, it was a loss which would sustain the action. It is claimed on the part of the defendant that he

is not legally chargeable for a loss resulting from the exposure, for the reason that it was too remote. I am satisfied, however, that this position is not tenable. The exposure and the loss to the plaintiff proceeding from it must be regarded as incidents of the wrong, as legitimately and directly connected with it. No illegal act intervened between the seduction and the loss; the exposure was justifiable, and unless the defendant is responsible for the loss, the plaintiff has no remedy. It is true that the loss in this case was very slight, but the same principle applies that would be applicable if a long and severe sickness, occasioning great expense, or a total deprivation of reason, had been produced by the same cause. It is just that a seducer should be responsible for such consequences, and I think he is so, by law. In *Keenholts* v. *Becker*, (3 *Denio*, 346, 352,) which was an action by a husband for slanderous words not actionable *per se*, spoken of the wife, whereby he had sustained special damage. Beardsley, J., says, "Where slanderous words are repeated innocently, and without an intent to defame, as under some circumstances they may be, I do not see why the author of the slander should not be held liable for injuries resulting from it as thus repeated, as he would be if these injuries had arisen directly from the words as spoken by himself. A different rule would perhaps govern, where the repetition was itself slanderous, and the injurious consequences arose, in part at least, from the second slander." In *Olmsted* v. *Brown*, (12 *Barb*. 657,) which was a case similar to the last, Mullett, J., after stating that there may be intentions and occasions which will justify the repetition of slanderous words, says, "Where they do occur, the repetition of slanderous words, with the proper intentions, may be considered the ordinary or necessary and legitimate consequence of the uttering by the first slanderer, and render him accountable for all the injuries occasioned by such legitimate repetition." The views advanced by those learned justices, appear to me to be in point upon the question under consideration. For other cases bearing on the question, see *Sedg. on Damages*, 2d ed. 7–9, and subsequent pages, and cases there cited; also 542, 543.

The instruction to the jury that they might, on the question

Knight *v.* Wilcox.

of damages, take into view the wounded feelings of the plaintiff; and might not only recompense him, but punish the defendant according to the aggravation of his offense ; and his refusal to charge that vindictive damages could not be recovered, were, I think, correct. (*Bartley* v. *Richtmyer,* 4 *Comst.* 38. *Sedg. on Damages,* 2d ed. 542.) And the refusal to charge as desired on the other point, further than was done, was not, I think, erroneous.

In my opinion, no substantial error in the admission or rejection of evidence which calls for a new trial was committed. The testimony given of the defendant's declarations, as to the pecuniary circumstances of his father, on the plaintiff being permitted to prove the pecuniary circumstances of the defendant, was not within the offer and decision made, and the defendant should have moved to have it stricken out if he desired to object to it. Besides, it was but a repetition of what the witness had before stated without objection. No evidence of the defendant's pecuniary circumstances was given. In respect to the offer to prove by Mrs. Belden that the plaintiff was told that the character of Miles, who was in the habit of visiting at the plaintiff's house frequently, was bad in regard to chastity, I think the evidence was admissible, but that it is apparent no harm was done by its rejection. The defendant was permitted to go fully into proof by that witness and others as to the reputation of Miles, and his intimacy at the plaintiff's house, and as to the knowledge of the plaintiff of his bad character. There was no proof of any association or conversation at any time prior to the seduction complained of, between him and the daughter, nor of any immoral or improper act on his part at the plaintiff's house.

The damages appear to be high, but not so excessive as to indicate passion, partiality, prejudice, or corruption, on the part of the jury. (5 *Cowen,* 106.)

Motion for a new trial denied.

[CAYUGA GENERAL TERM, June 5, 1854. *Johnson, T. R. Strong* and *Welles,* Justices.]