## PATTERSON VS. THOMPSON.

The right of a parent to maintain an action for the seduction of his daughter, being founded upon loss of service and consequent expense, the action can be maintained only where the daughter, at the time of seduction, is under age and bears to the parent the relation of servant, or, if of age, resides in the parent's family, doing acts of service: and also, where loss of service is sustained or expense incurred by the parent.

In this case, the daughter being over twenty-one years of age, and not a member of her father's family at the time of seduction, and neither loss of service nor expense proven: *Held*, that he could not maintain the action.

The period of limitation in actions for seduction, is one year from the time the cause of action accrued.

*Quere.* Will a verdict, in a seduction case, be set aside for excessive damages? or should punishment of the defendant enter into the finding?

*Appeal from Chicot Circuit Court.*

Hon. JOSIAH GOULD, Special Judge.

GARLAND & RANDOLPH for appellant.

YELL and BELL & CARLTON, for appellee.

Mr. Justice FAIRCHILD delivered the opinion of the court.

The record of this suit, which is an action on the case by the appellee for the debauch and getting with child of his daughter, presents for consideration these propositions: Whether the action was barred by limitation; whether the plaintiff had any right of action on account of the intercourse between the defendant and the daughter of the plaintiff; and whether the verdict should not have been set aside for its allowance of excessive damages. All of these propositions, except a branch of the first, which is presented by the plea of limitations of one year, are to be determined upon the evidence, and the legal principles which the evidence makes applicable to the propositions.

It does not seem to be contested, and if it were, the evidence makes it undeniable, that sexual intercourse was had between the defendant and a daughter of the plaintiff; and the latter deposes that it resulted in her pregnancy, and in the birth of a child. This, with the concurrence of other facts, would require a verdict for the plaintiff for some amount. And unless the assessment of damages be so great as to be disproportioned to the injury, the finding of the jury must stand as a proper assessment of damages, at least as one made by the proper tribunal, and that cannot be reviewed by this court. And perhaps a notice of some cases in which courts have declined to set aside verdicts for giving exces- sive damages may lead to the conclusion that the immunity of a verdict from interference by a court, upon this ground, ought to be expressed in stronger terms.

In the only case in which this court is remembered to have expressed its opinion on this subject, the jury had rendered a verdict of one hundred dollars in damages, for taking hogs that were not proved to be worth over twenty-five dollars. In reply to the point made for the plaintiffs in error, that the damages were excessive, the court said : "Nor are we disposed to set aside the verdict on the ground of excessive damages * * * * The trespass in this case was rather a flagrant one. The plaintiff's premises were invaded, his close broken, entered, his hogs driven off, killed and converted ; and on the trial, the defendants proved no color of title to the property. True, the value of the hogs was proven not to exceed twenty-five dollars, but the jury were not confined, exclusively, to the value of the hogs, in determining the amount of damages to be awarded to the plaintiff—they had the right to take into consideration the invasion of the plaintiff's premises, the vexation to his feelings, the inconvenience to him arising from the deprivation of his property, as well as its value, and then to add something by way of smart money, or exemplary damages. Under all the circumstances of this case, we cannot conclude that the verdict for one hundred dollars was so exorbi-

tant as to indicate corruption or bad faith on the part of the jury, and shall not therefore disturb it." *Clark vs. Bales.*, 15 *Ark.*, 458.

In an action for a libel, wherein fifteen hundred dollars damages had been found, when it was contended the plaintiff was entitled to nominal damages only, the supreme court of New York remarked: "The question of damages was within the proper and peculiar province of the jury. It rested in their sound discretion, under all the circumstances of the case, and unless the damages are so outrageous as to strike every one with the enormity and injustice of them, and so as to induce the court to believe that the jury must have acted from prejudice, partiality, or corruption, we cannot, consistently with the precedents, interfere with the verdict." After citing several old English cases, the court proceeds: "The law has not laid down what shall be the measure of damages in actions of tort. The measure is vague and uncertain, depending upon a vast variety of causes, facts and circumstances, as the state, degree, quality, trade, or profession of the party injured, as well as of the party who did the injury. * * * The damages, therefore, must be so excessive as to strike mankind, at first blush, as being, beyond all measure, unreasonable and outrageous, and such as manifestly show the jury to have been actuated by passion, partiality, prejudice, or corruption. In short, the damages must be flagrantly outrageous and extravagant, or the court cannot undertake to draw the line: for they have no standard by which to ascertain the excess." *Coleman vs. Southwick*, 9 *John. Rep.*, 51–52.

Nine hundred and twenty dollars had been rendered as damages in a seduction case, which was claimed to be so unreasonable as to require the interference of the court, but SUTHERLAND, J., responded in this way: "Nor do I think we are authorized to interfere on the ground of the excessiveness of the damages, although they appear to us much larger than they should have been. There were no aggravating circumstances in the case; no acts of seduction were used, for none were necessary. The character of the daughter had long been considered loose and

abandoned. There were no wounded feelings, or blasted reputation to aggravate the moral impropriety of the defendant's conduct, or to call for exemplary damages. We should have been better satisfied with a verdict barely sufficient to remunerate the plaintiff for her actual loss. But the damages are not so flagrantly outrageous and extravagant as necessarily to evince intemperance, passion, partiality, or corruption on the part of the jury; and where that is not the case, the court will not undertake to set their judgment on a question of damages, in an action of this nature, in opposition to the judgment of the jury. It is the judgment of the jury, and not of the court, which is to determine the damages in actions for personal injuries. *Sargent vs. Denniston*, 5 *Cow.*, 118.

It should be remarked of this case, that the court did set aside the verdict, for the reasons that the jury did not intend to give any thing for the alleged seduction, and that the verdict was made up of an allowance of twenty dollars for the plaintiff's loss of service of the daughter, during confinement, and of nine hundred dollars, as the sum estimated by the jury necessary to support the child till it should become of an age to support itself.

In another action for seduction, in which the verdict was for six hundred and fifty dollars, the same court answered, to the same suggestion, that, "The damages appear to be high, but not so excessive as to indicate passion, partiality, prejudice, or corruption, on the part of the jury." *Knight vs. Wilcox*, 18 *Barb.*, 221.

And so the court of appeals of Kentucky, in a case in which eighteen hundred dollars were awarded against the defendant for the seduction of the plaintiff's daughter, held that, when the defendant had admitted the cause of action by default, and was shown upon the inquisition of damages, to be worth eighteen thousand dollars, the verdict was not so flagrantly excessive as to authorize a new trial. *Applegate vs. Ruble*, 2 *A. K. M.*, 130.

*Duberly vs. Gunning*, 4 *T. R.*, 651, is often referred to as the strongest case on record in which the damages were exemplary, but were allowed to stand, although for the sum of five thousand

pounds, when the plaintiff in the action for criminal conversation, had so acted as to induce the court to believe that he had consented to the prostitution of his wife. BULLER, J., thought that the verdict should have been for the defendant, and wished to have it set aside, and a new trial granted; but Lord KENYON, although he admitted that nominal damages would have satisfied him, and that those given were much larger than they should have been, said that he had never known an instance in which a new trial had been granted in such a case on account of excessive damages, and that he had not courage enough to make a precedent.

In *Lee vs. Hodges*, 13 *Grattan*, 726, the jury awarded damages in the sum of four thousand, five hundred dollars, against the defendant, in an action for seduction, which the defendant moved to set aside. The court, where the case was tried, refused to grant the motion upon a release by the plaintiff in open court of fifteen hundred dollars of the damages. No question was made on this point in the court of appeals, but the opinion of the court refers to the amount of the verdict to infer that the jury considered the case to be of an aggravated character.

Upon a question of this sort in the supreme court of Georgia, LUMPKIN, J., used this emphatic language: "Never, so help me God, while I have the honor to occupy a seat on this bench, will I consent to control the jury, in the amount of compensation which they may see fit to render a father for the dishonor and disgrace thus cast upon his family; for this atrocious invasion of his household peace."

These are but a few, are merely specimens, of the many cases, in which courts have refused to disturb verdicts that have been complained of for being unreasonable, unjust, or outrageous, in their assessments of damages. It is apparent, from a review of the cases under the head of seduction, that the determination of the plea of not guilty, affords but little clue from which to conjecture the amount of damages to which he is to be subjected. The action is sustainable by a father solely because he is supposed

to be injured by the loss of the labor which his debauched daughter becomes unable to perform, and by the expenses which her consequent sickness entails upon him; but damages are given to him regardless of the fact that the services of the daughter are of unfrequent occurrence and of trifling value, and upon the express grounds that his feelings as a father have been outraged, that his family has been disgraced, that his child, from being the ornament of her circle, and the pride of his life, has become, by the defendant's wrong, the shame of his old age, and an outcast from decent associations. In the language of one of the instructions to the jury in this case, submitted on the part of the plaintiff, he goes into court as a master, but goes before the jury as a parent. He must then go out of court with the price which a jury puts upon the chastity of his daughter, with their estimate of what the destruction of the honor of his family, and of his own peace of mind, shall be accounted at in good and lawful money. And if the heart of a parent is made to revolt at the paltry sum by which innocence and happiness are balanced, or to lament that a heavy verdict cannot compensate the loss of character, of respectability, and of fatherly delight, the result is the inevitable consequence of the legal fiction that transforms his case from a statement of slight pecuniary loss to an appeal for satisfaction for the violation of female virtue, and from its submission to a tribunal that has no rules, or limits, or measures, by which to make the required response.

Notwithstanding the evident want of logical principle that marks the practical operation of this action, it has long been well settled that a father may recover damages beyond a compensation for the facts alleged in his declaration, the loss of the services of his daughter, and the lying-in expenses; and that courts disclaim the desire, and sometimes almost the power to interfere with verdicts, however unreasonably large these may seem to be.

Speaking of any action upon the case for debauching and getting with child an adopted daughter, Lord Ellenborough, in

1809, said "This has always been considered as an action *sui generis*, where a person standing in the relation of a parent, or *in loco parentis*, is permitted to recover damages for an injury of this nature, *ultra* the mere loss of service   *   *   *   and, however difficult it may be to reconcile to principle the giving of greater damages on the other ground, the practice has become inveterate, and cannot now be shaken." *Irwin vs. Dearman*, 11 *East* 23. So, Sutherland, J. justified the departure from strict legal rules in the admission of evidence, because the action itself was not in accordance with legal principle. He says : " The testimony objected to was merely in aggravation of damages, and we all know, that although loss of service must be shown, yet that any considerable damages are given not to cover the actual loss sustained, but for injury to the parental feelings. 4 *Cow.*, 412; 5 *id.* 106 ; 1 *Wend.*, 447 ; 3 *Camp.*, 519; 4 *Cow.*, 355; 2 *Phil. Ev.*, 157, *and cases there cited.* The action is altogether anomalous in its character, and the ordinary rules of evidence cannot, in all their strictness, be applied to it, without defeating its essential object." *Stiles vs. Tilford*, 10 *Wend.*, 341.

The law as administered is well stated by Starkie, in his excellent practical work upon evidence. " The jury, in a case of this nature, are not confined in their estimate of damages to the mere amount of the damage from loss of service, and the expenses consequent upon the seduction, but may award a compensation for the loss which the father has sustained in being deprived of the comfort and society of his child, the injury he sustains as the parent of other children, whose morals may be corrupted by her bad example, and for the dishonor and disgrace cast upon the plaintiff and his family by such an injury." 2 *Stark. Ev.*, 7 *Am. Ed.*, *Part II.*, 990. See, also, *Knight vs. Wilcox*, 15 *Barb.*, 280.

But, whatever may be said about damages being given and allowed to stand as a compensation for mental suffering, for social degradation, and for moral injury, in actions for personal injuries, the wrong cannot be measured by money. With a man of deli-

cacy, or of honor, no verdict can be an equivalent for an unprovoked assault, committed under aggravating circumstances of time, place, and association, for a malicious prosecution upon a disgraceful criminal charge; and for the offender to speak of atoning to a husband or father, by submitting to the most extreme verdict in actions for criminal conversation and for seduction, would be adding the greatest insult to the greatest injury.

Another reason is also given in the books for the habit, and perhaps for the encouragement of exemplary damages, namely, to punish defendants for wrongs that the law does not enumerate as crimes. *Bartley vs. Richtmeyer*, 2 *Barb. S. C. R.*, 189 ; *George vs. Van Horn*, 9 *Barb.*, 527 ; *Campbell's Lives of Lord Chancellors, Vol.* 5, 207 ; *Wilson vs. Spreul*, 2 *Penn. R.*, 527. If it be a reproach upon the common law that it has no criminal jurisdiction over seducers and begetters of bastard children, that cannot justify courts and juries, because " ready and eager to punish the violator of female chastity and the peace of families," to " usurp the law making power in order to remedy a real or fancied hardship," or to give, or uphold outrageous damages in cases properly within the rules of civil jurisdiction.

It is with regret that the legal biographer of Lord Camden, whose work has just been cited, notices that so sound a lawyer, and temperate a man as he was, should say that damages were designed, among other purposes, to serve " as a punishment to the guilty, and as proof of the detestation in which the wrongful act is held by the jury." This and similar decisions are attributed to the immense popularity which LORD CHIEF JUSTICE PRATT had acquired by his noble and decided efforts to break up the illegal issue of general warrants from the office of the secretary of state, thereby inclining him, in political trials, to the popular side. If punishment is to be inflicted on culpable defendants for seductions, or for the commission of any public wrongs, it should be held due to the government to whom belongs the redress of such wrongs; should be inflicted under a code that defines the crime without fiction, and confers the benefits of a criminal trial;

and by a responsible tribunal that must affix penalties by known rules, and can be restrained within some limits of punishment moderated by more disinterested authority than the general claim of a plaintiff to damages.

Our own state is free from the reproach of not defining seduction as a crime, and of not providing for its punishment, as appears by the following enactment:

"Any person who shall be convicted of obtaining carnal knowledge of any female, by virtue of any feigned or pretended marriage, or of any false, or feigned express promise of marriage, shall be imprisoned not exceeding two years, in the jail and penitentiary house of this state, and fined in any sum not exceeding five thousand dollars at the discretion of the court or jury before whom such person may be convicted." Yet, there is added this salutary provision: "but no person shall be convicted of said crime upon the testimony of the female, unless the same be corroborated by other evidence." *Ch.* 51, *Art. II., Sec.* 3, *p.* 369, *Gould's Dig.*

And if no provision has been made for the punishment of any seduction that has been encompassed by other means than a false marriage, or false promise of marriage, it must have been because the law-making power has not thought it necessary to make such provision; and it is beyond the scope of the civil administration of our law to make up the deficiencies of the criminal law by punishing a defendant with damages, because he is not visited with fines, forfeitures, imprisonment, stripes or death. Nor is *sec.* 274, *ch.* 52, *Gould's Dig.*, opposed to this, as that preserves a right of action to the party injured, which, in this case, would be the party seduced, when a felony has been committed attended with personal injury.

Though remarks may sometimes have been made by judges in charges to juries, or in the delivery of hastily prepared opinions, favoring the idea that heavy damages may be given to punish, or to reform a defendant, or to express the indignation of courts, or juries, or society, against a particular act, or to deter others from

the perpetration of wrong, no well considered decision has been found that inculcates such doctrines, nor could such decision, if found, be supported by any legal principle. A private action is not the medium for satisfying the demands of public justice, nor an instrument recognized by law to effect individual reformation ; and the strongest advocates of vindictive damages generally contend that their office is to make satisfaction by a pecuniary equivalent, as far as that can be done, for actual, though undefinable injuries.

All the cases quoted from above, and all that have come under our notice, in refusing to disturb verdicts, because not flagrantly excessive, nor so outrageous, extravagant, or unreasonable, as to indicate passion, prejudice, partiality or corruption, admit that an opposite kind of verdict should be set aside. As long as courts can see, we suppose, that the judgment of a jury has been honestly and dispassionately exercised, they will not interfere with verdicts for personal injuries, however mistaken or unreasonable they may believe the conclusions of a jury to have been : and that is all that is meant by saying that the judgment of courts ought not to be put in opposition to the judgment of juries in actions of this sort.

Without saying whether the doctrine is not too strongly expressed, and has not been too pertinaciously adhered to by courts in refusing to grant new trials against the large verdicts that have become frequent in actions for seduction, we will test the present case by the doctrine as so declared and applied. But in doing so we shall give only the result of a thorough examination of the testimony, gladly passing by all particulars of alleged misconduct, or of alleged bad reputation of Sallie Thompson. And this result is a difference of opinion among the members of the court, whether the verdict should have been set aside by the circuit court for an excessive finding of damages. And as there are other points in the case which insure its determination, the court makes no decision upon the point under consideration.

Another of the propositions stated in the beginning of this

opinion strikes deeper, questioning the verdict, not because it is an excessive one, but because no verdict should have been given for the plaintiff, on account of the facts in evidence establishing that he has no right of action against the defendant.

For a trespass or injury to a child, an action may be brought against the wrong-doer, but it must be in the name of the child except for the loss of service which the father or person standing in his place may have sustained, or for expenses entailed upon him. *Hartfield vs. Roper*, 21 *Wend.*, 617; 2 *Rob. Pr.*, 555.

This action is not intended to satisfy the seduced daughter for her lost virtue; as for that she had her own right of action, if she did not consent to the seduction, or had not condonated it by voluntary subsequent illicit intercourse with the defendant; but the damages recovered are for the father, for the loss, the injury, the suffering and the disgrace that the seduction and pregnancy of the daughter have produced to himself and his family.

To entitle the plaintiff to any verdict against the defendant, there must be shown a criminal intercourse between the latter and the plaintiff's daughter, that the daughter was the servant of her father when the child was begotten, or when the criminal intercourse was had, and that the intercourse has produced loss of service, or expenses to the father. *Lee vs. Hodges*, 13 *Gratt.*, 737.

The criminal intercourse in this case being without question, the first enquiry is, was Sallie Thompson the servant of her father at the time of such intercourse?

If she had been under twenty-one years of age, unless apprenticed to another, or emancipated from her natural servitude, she would have been his servant whether she was living in his family or not. He would have had a right to command her services, if he had before failed or declined to exercise the right, and could have maintained an action for her seduction, although she may not have been in his actual service. 3 *Ph. Ev.*, 531, 4*th Am. Ed.*

In the English courts, it is held, that the daughter, though an infant, must reside with her father, or be absent temporarily with

his consent, and with an intention of returning to her father's house, or the plaintiff cannot maintain the action. *Dean vs. Peel*, 5 *East.*, 45; *Griffiths vs. Twtgen*, 28 *Eng. L. & E. R.*, 371. But in the American courts, the doctrine is not thus qualified, and even if the daughter be absent without the intention of returning to her father's house, he may sue. *Martin vs. Payne*, 9 *John.*, 389; *Nickleson vs. Stryker*, 10 *John.*, 107; *Bartley vs. Richtmeyer*, 4 *Const.*, 44; *Mulvehall vs. Millward*, 1 *Kern.*, 343.

But if the father have bound out the daughter to another, not having the right to her services, he can sustain no injury, and not losing anything, is not entitled to damages. *Dain vs. Wycoff*, 3 *Seld.*, 194; *Keller vs. Donnelly*, 5 *Md. Rep.*, 218.

For the same reason, the relation of master and servant not existing, a step-father cannot recover, nor a mother, for the seduction of a daughter, in the lifetime of the father, though she incur the expenses of her daughter's confinement. *Bartley vs. Richtmeyer*, 4 *Const.*, 38; *Vassal vs. Cole*, 10 *Misso. Rep.*, 634; *George vs. Van Horn*, 9 *Barb.*, 523.

But if the daughter be of full age, the father has not a right to her services, and he is not legally injured by her seduction, unless she is in his actual service; that is, unless she resides in the family, and does, at least, such slight acts of service as a daughter and member of her father's family is expected to do. The service must be actual, though merely formal. A daughter of full age will not be presumed to be in the father's service, elsewhere than in his family. *Nickleson vs. Stryker*, 10 *John.*, 117; *Miller vs. Thompson*, 1 *Wend.*, 447; *Briggs vs. Evans*, 5 *Ire.*, 21; *McDaniel vs. Edward*, 7 *Ire.*, 408. And though, after the seduction, she return to her father's house, and there be delivered at the expense of the father, he cannot obtain damages if she were absent when the injury was committed. *Bartley vs. Richtmeyer*, 4 *Comst.*, 45, *Postlethwaite vs. Parkes*, 3 *Burr.*, 1878.

All of the above authorities admit, or imply, that when the adult daughter lives in the family, and performs the slightest acts of service, the father, or person standing in the place of a father,

has the same right of action, and may recover the same damages as if the daughter were an infant. Also, *Moran vs. Dawes*, 4 *Cow.*, 412.

Seduction is not necessary to the action, for the consent of the daughter, without the connivance of the father, will not deprive him of his action, though only nominal damages, or actual pecuniary loss could be recovered. *Kelley vs. Haines*, 2 *Caines*, 292. Nor will seduction, or sexual intercourse, unaccompanied by loss of service or expense incurred, give a right of action. After the relation of master and servant is established, and loss of service is shown to have been the result of the intercourse, the plaintiff may recover damages as a father, but he has no place in court till he has shown that he has sustained loss as a master.

"In an action of trespass on the case, for an injury like this, the real cause of action is the expenditure of money, and the loss of service consequent upon the seduction. Hence the action cannot be sustained for seduction, unless it is followed by pregnancy, or loss of health, and consequently of service. The *per quod* is the gist of the action." *Sargent vs. Dennison*, 5 *Cow.*, 116. "But even in the case of an actual parent, the loss of service is the legal foundation of the action." *Irwin vs. Dearman*, 11 *East.*, 23. "It was, undoubtedly, necessary to a maintenance of this action, for the plaintiff to prove a loss of the services of his daughter in consequence of the seduction. The only legal foundation of the action is an injury to him in the relation of master and servant, by a loss of his servant's services. For the injury to the daughter, for the disgrace brought upon her, for the dishonor and mental suffering occasioned to himself and his family, and the deprivation of the comfort of the society of his child, uncorrupted and undefiled, no action is allowed by law. The right of the plaintiff to sue is the same as that of any master, in a case where his female servant, whether connected with him by ties of blood or not, has been debauched, or any wrong has been done to his servant, and no greater." *Knight vs. Wilcox*, 15 *Barb.*, 280. See, also, *Wilson vs. Sproul*, 3 *Penn. R.*, 51. As seduction of a

daughter, without loss of service, will not uphold an action for a father, neither will the loss of service and payment of lying-in expenses be sufficient unless the relation of master and servant existed at the time of seduction. *Bartley vs. Richtmeyer*, 4 *Comst.*, 45. On this principle, mothers, or persons standing in the place of a father, are denied the action, after incurring the expenses and sustaining the loss occasioned by pregnancy, when the intercourse which led to the birth of the child took place before the relation of master and servant existed between a plaintiff and the alleged servant.

The relation of master and servant must exist at the time of the seduction, or illicit intercourse, to enable the father to bring suit; and added to this, loss of service, or payment of money, as the direct consequence of the intercourse, must ensue before plaintiff can call for a verdict. Having obtained this position in court, he may then recover damages as a father, and without regard to the value of the services lost, or money expended, from the pregnancy, confinement or sickness of the daughter.

It is not necessary that a child should be born to the daughter, or that she should be got with child, to sustain the action on the part of the father, provided there be other sickness and expenses that are the direct consequence of the illicit intercourse. Hence, where the daughter became pregnant in October, and the action was brought in December, it was sustained, because, before suit, the daughter had been unable to work on account of her pregnancy, and the subsequent birth of the child and necessary expenses, before the trial, were received in evidence in aggrvation of damages. *Stiles vs. Tilford*, 10 *Wend.*, 339. *Hewitt vs. Prome*, 21 *Wend.*, 79, is another case of the same kind, which has not been overruled on this point.

In *Knight vs. Wilcox*, the sexual connection did not result in pregnancy, nor was the daughter's health affected by it so as to cause any loss of service to her father, but the fact of the intercourse becoming known, the parents and family of the daughter talked much to her, and threatened to prosecute the defendant.

The fear of public exposure, shame at detection, or remorse for her conduct, overcame the daughter's bodily strength: she became too unwell to perform her usual household duties, and the father sued, striving to support the suit by this loss of service. He was nonsuited on trial for not showing any loss of service accruing from the seduction. The supreme court reversed the judgment, and remanded the case. 15 *Barb.*, 279. At the next trial the plaintiff obtained a verdict and judgment, which was affirmed in the supreme court. 18 *Barb.*, 212. But, on final hearing in the court of appeals, it was held that such loss of service would not uphold the action, that it was not caused by the intercourse, but by its detection some months afterward. 14 *N. Y. R.*, 413.

It then appears that seduction is not enough without loss of service, nor will loss of service without seduction at the time the plaintiff stands in the relation of master to the debauched female. Both must conjoin to make a right of action. And in this way is the law laid down as the correct principle deduced from the decision. *George vs. Van Horn*, 9 *Barb.*, 527.

An application of these principles to this case will determine the right of the plaintiff to maintain it.

And as to the loss of service—there is no proof, and can be no pretense, that the plaintiff incurred any expense, or suffered any loss, from Sallie Thompson's seduction and pregnancy, or from Sallie Baker's confinement, or child. She conceived in August, 1852; she says she went to live with her sister in the summer of 1852; another witness puts the time in July, where she remained till Christmas, when the defendant took her to Alabama. There she married before the child was born. Her expenses in Alabama, before her marriage, if any, were not chargeable, by the proof, to the plaintiff; after her marriage, the husband with the wife took her liabilities, and in course of time her child. Before going to Alabama, and after conception, she was no charge to her father, or if she had been, or was in his actual service, no loss of service accrued.

Sallie being over twenty-one when she was seduced, in the spring of 1851, by the defendant, must have been in the actual service of her father; that is, a member of his family, when the injury was committed. Whether the injury refer to the first connection, or to that from which pregnancy ensued, according to Sallie Baker's deposition, she was not, at either period, a part of her father's household. We have not overlooked the statement in Winnie Brown's second deposition, that Sallie made her father's house her permanent home from the time she left teaching at the defendant's till Christmas, 1852; but in this she is contradicted by Sallie herself, and by other witnesses so far as their knowledge extended. Although we were satisfied that the plaintiff was in law the master of Sallie Thompson when she was seduced or impregnated, or if the jury so found, that would not supply the necessity of proof of loss of Sallie's service to the plaintiff, or of his being burdened with expenses for her, growing out of her connection with the defendant.

The instruction to the jury, as well for the plaintiff as for the defendant, conceded that, to find for the plaintiff, the jury must have had it proved to them that Sallie Thompson was a servant of the plaintiff at the time of the seduction, and that loss of service was its result. The evidence not establishing these conditions, the verdict was against law, and against evidence, and upon the motion of the defendant, it should have been set aside, and a new trial granted because the plaintiff had not shown any right of action.

Two pleas of limitations were interposed by the defendant; but that of five years, which depends upon the evidence, and is good or bad as the injury relates to the first debauch of the plaintiff's daughter, or to her conception, need not be considered until it has been found that the circuit court properly sustained a demurrer to the plea that relied upon the lapse of one year as a bar to the suit.

This latter plea was founded upon this law: "The following actions shall be commenced within one year after the cause of

action shall accrue, and not after: First, all special actions on the case, for criminal conversation, assault and battery, and false imprisonment; Second, all actions for words spoken, slandering the character of another; Third, all words spoken whereby special damages are sustained." *Rev. Stat.*, *ch.* 91, *sec.* 7; *Eng. Dig.*, *ch.* 99, *sec.* 8; *Gould's Dig.*, *ch.* 106, *sec.* 11.

It is insisted here for the appellant, the defendant below, that the first specification of the section should be construed as if it read, "all actions on the case, all actions for criminal conversation, all actions for assault and battery, and all actions for false imprisonment;" and the inference is then made that this, being a special action on the case, is included within the statute; while the argument for the plaintiff maintains that, as no mention is made of an action for seduction, this suit falls within the provision for unenumerated actions, of which the period is five years. *Gould's Dig.*, *ch.* 106, *sec.* 19.

If the statute were written as the defendant would have it construed, it would provide with consistency for similar classes of cases, in forcing an early legal inquiry into initiating causes of action, or in wisely committing to legal oblivion such as should not be made the subjects of prompt complaint, while the literal and technical construction of the plaintiff would keep the door open for vexatious controversies longer than is allowed for actions of trespass upon lands, for taking or injuring goods, for libels, and for actions upon the case founded on a contract or liability, thus reversing the whole policy of our limitation law. And if the construction should be, that the clause under consideration only embraced special actions on the case for the wrongs specified in it, there would be the incongruity of different periods of limitation for the same causes of action when prosecuted in the different forms allowed by the common law; as one year for actions on the case for batteries and false imprisonments, and five years when the same acts were complained of in actions of trespass.

Doubtless, the obvious and natural, and therefore the first construction of any writing, is that of its literal expression; but

in construing a statute, unless its terms are entirely free from ambiguity, regard must be had to its known object, to the mischief intended to be provided against, to its general spirit and intent. The limitation law of the Revised Statutes, in all its sections, is to be construed as one law. *Walker vs. Peay*, 22 *Ark.*, 111. All its parts should be harmonized into one consistent whole. Its object was to provide a limit for the beginning of all common or important actions, although there is a provision for unspecified ones; and its undoubted policy is to close the courts early, against actions that embrace or engender personal strifes and embittered feelings, destroy the peace of families, and disturb the repose of society: and it should have such sensible construction as will accord with its spirit and promote these objects. We therefore hold that an action seeking to recover damages for the seduction or pregnancy of a daughter, must be begun within a year from the time the cause of action accrued.

In sustaining the demurrer of the plaintiff to the defendant's plea of limitation of one year, the circuit court erred; and as this error was assigned as a cause of error for a new trial, the court should have sustained the motion to correct its own error, and, in not doing so, again erred.

There are other errors apparent upon the record, and especially to be observed in the admission of illegal testimony against the objection of the defendant, which are not necessary to be noticed. But because the circuit court refused to grant a new trial for its error in quashing the plea of limitation of one year; and because the plaintiff did not show any right of action, the judgment is reversed, with instructions to grant the defendant a new trial, and, on another trial, to apply the law as herein declared.