Daniel, J.
The action by which a father recovers for the seduction of his daughter is founded not on the relation of parent and child, but on the relation *728 actual or constructive of master and servant. The loss of service which he has sustained or is supposed to have sustained in consequence of the debauchment of his servant, is the ground on which his legal right to damages rests at the common law; though- when this prerequisite to the maintenance of the suit is established, the damages which he is allowed to recover are not measured by the value of the services which have been lost or are supposed to have been lost to him, but find their standard rather in the magnitude of the wrong which has been done to his feelings as a father.
Where the daughter is a minor at the time of the seduction, the rules which have been adopted by the courts in this country in respect to the nature of the facts and circumstances necessary to prove the relation of master and servant, and the loss of .service to the father, vary in some important particulars from those which have hitherto prevailed in England. Where, however, the daughter is above the age of twenty-one years, there is no difference between the English and American cases as to the necessity of the father’s showing generally, in order to maintain his suit, that the daughter was living with him or was in his service at the time of the seduction; though-any acts of service, however slight, have been held sufficient. Nickles v. Stryker, 10 Johns. R. 115; 2 Rob. Pr. 559, (new ed.); Postlethwaite v. Burke, 3 Burr. R. 1878; Bennett v. Allcott, 2 T. R. 166. An exception to this rule was however allowed in the case of Speight v. Oliviera, 3 Eng. C. L. R. 445, where the defendant, under the false pretense of hiring the plaintiff’s daughter as a servant, induced her to leave her father’s house where she was rendering service in domestic matters, and afterwards seduced her whilst she was remaining in his the defendant’s house. In that case, though the daughter was twenty-three years of age, the father *729 was allowed to recover upon the ground that the absence of the daughter from her father’s house and the interruption in her services were occasioned by the fraud and contrivance of the seducer.
In the case before us it appears from the evidence, as set out in the bill of exceptions, that the daughter of the defendant in error, at the time of the alleged seduction, was between twenty-three and twenty-four years old ; that her general home was at the house of her father, but that she sometimes took service in the houses of families in the neighborhood, returning, at the end of the terms of such service, to her father’s house; and that she was, at the time of the said alleged seduction, residing not with her father, but in the neighborhood, in the house of the plaintiff in error, under a contract, made by her with him, after she had attained the age of twenty-one years 5 by the terms of which contract she was to render him service in his house for the space of twelve months for a price to be paid her for her use ; and that before her pregnancy became known to others, and before the end of the year for which she had contracted to live with the plaintiff in error, she left his house and service, and after living a short time at the house of another person, returned to the house of her father, where she. was delivered of a child before the institution of the suit.
If we apply to this statement of the case the rules of the common law already mentioned, it is obvious that there is no ground on which to rest the refusal of the Circuit court to instruct the jury that the action could not be maintained.
The daughter was of full age, living away from her father’s house, under a contract made by her and for her own exclusive benefit, after she had attained her majority, when she had a right to make her own contracts. There is an absence of any evidence going to *730 show that improper means were used to induce her to enter into the contract, or that the plaintiff in error • entertained any improper designs towards her when he engaged her services. It does not even appear that she was in the father’s service, or that she owed him any service, or was living with him at the time when the contract was made. The fact that she returned to her father’s house, and was there delivered of a child before the institution of the suit, does not make out a case. There is no evidence that the father paid or became in any manner liable to pay the expenses of her lying in. And indeed had there been such evidence, it would not have furnished under the circumstances a ground for the action.
It is suggested, however, in the petition for the supersedeas, (and I presume properly,) that the judge of the Circuit court, in refusing to give the instruction, was governed by what he supposed to be a change in the law, effected by a provision of the Code of 1849, declaring that “ an action for seduction may be maintained without any allegation or proof of the loss of the service of the female by reason of the defendant’s wrongful act.’,’
The defendant in error has not been represented by .counsel here ; and I regret that in a case of such interest turning upon a statute, the construction of which is now for the first time made the subject for the consideration of this court, and to which such important effects have been attributed by the judge below, we have to proceed to a decision without the aid of the views which controlled his judgment.
On the part of the plaintiff in error the.ground is taken in the petition for a supersedeas, that in an action for seduction at the common law, it is necessary to aver and prove not only the relation of master and servant, but also the fact of the loss of service; and it was urged as well in an oral as in a written argument pre *731 sented by his-counsel, that the only design contemplated by the section in question is to dispense simply with what is familiarly known in pleading as the “ per quod serviliwm amisit,” and the proof to sustain its averments; and consequently, that it is just as essential now as it was before the enactment of the Code, to aver and prove the relation of master and servant; or the right (at least) of the plaintiff to the services of the female alleged to be seduced. In support of this view, it was said that such was evidently the design of the revisors in recommending the enactment of the section as shown in their report; and it was argued that as the legislature adopted the section without alteration, it was fair to infer they had the same design in passing it.
At page 734 of their report, in a note to this section, the revisors say, “ The foundation of the action by a father to recover damages against the wrong-doer for the seduction of his daughter, has been uniformly placed not upon the seduction itself, which is the wrongful act of the defendant, but upon the loss of service of the daughter, in which service he is supposed to have a legal right or interest. It has therefore been held in England that the loss of service must be alleged in the declaration and proved at the trial, or the plaintiff must fail. ‘It is (says Chief Justice Tindal in Grinnell v. Wells, 7 Mann. & Gran. 1033, 49 Eng. C. L. R. 1033,) the invasion of the legal right of the master to the services of his son, that gives him the right of action for beating his servant; and it is the invasion of the same legal right and no other, which gives the father the right of action against the seducer of his daughter.’ Yet in Revill v. Satterfit, 1 Holt’s R. 442, 3 Eng. C. L. R. 153, it was conceded by Hullock, sergeant, for the defendant, that in most cases of this sort the condition of service was regarded as a mere conveyance to the *732 action. It was the form through which the injury was presented to the court; and having obtained its admission upon legal principles, it brought along with it as parts of itself all the circumstances of the case. And Chief Justice Tindal, in the case referred to, says, ‘ The damages recoverable by the father when he brings the action, are confessedly not limited to the actual expenditure of his money, but may be given according to the circumstances of aggravation in the particular case.’ It is obvious, then, that the ground of action is technical and the loss of service in a great degree a fiction ; since the most trifling and valueless acts of' service have been admitted as sufficient. In some cases indeed the action is placed upon the right to claim the services. In Hewitt v. Prime, 21 Wend. R. 79, Nelson, C. J. delivering the opinion of the Supreme court of New York, says, ‘The old idea of loss of menial services, which lay at the foundation of the action, has gradually given way to more enlightened and refined views of the domestic relations. These are, that the services of the child are not alone regarded as of value to the parent. As one of the fruits of more cultivated times, the value of the society and attentions of a virtuous daughter is properly appreciated; and the loss sustained by the parent from the corruption of her mind and the defilement of her person by the guilty seducer is considered ground for damages.’ The action being fully sustained in his judgment by proof of the act of seduction in the particular case, other circumstances come in by way of aggravating the damages. There being such opposite opinions as to what is necessary to afford a legal ground for the action, and the rule established in New York placing the action upon that which a jury look to in estimating the damages, we think it best that the same rule should be adopted in Virginia.”
If after looking to the note of the revisors any *733 doubt remains as to the end which they had in view in proposing the enactment, that doubt may, I think, be removed by noticing somewhat more particularly the cases to which they refer. In the first case, Grinnell v. Wells, the declaration alleged that the daughter of the plaintiff was a poor person, who maintained herself by her labor and personal services, and was unable to maintain herself except by her labor and personal services; that she was under the age of twenty-one years, and that by means of the seduction and her consequent pregnancy and sickness she became unable to work or to maintain herself, and that her father being of sufficient ability to maintain her, was forced and obliged to maintain her at his own charges, and incurred and paid divers expenses in maintaining, nursing and taking care of her during her sickness, &c.
It will be perceived that there was a failure to allege any loss of service to the plaintiff; and after a verdict in his favor for two hundred pounds, there was a motion in arrest of judgment, which was sustained. Tindal, C. J. after stating the character of the declaration, said that the right of the father to recover damages for the seduction of his daughter had been uniformly placed, not upon the seduction itself, but upon the loss of the service of the daughter. And in support of the propriety of the rule stated that the action rested on the same principle that governed the action of a master for the beating of his servant; and cited a passage from the opinion of the court in the case of Robprt Mary, in which it was said, “ If my servant be beaten, the master shall not have an action for this beating, unless the battery is so great that by reason thereof he loses the service of his servant; but the servant himself for every small battery shall have an action; and the reason of the difference is, that the master has not any damage by the personal beating of *734 liis servant but by reason of a per quod; viz: per quod servitium' amisit; so that the original act is not the cause of his action, but consequent upon it, viz: the loss of the service is the cause of his action.” And in concluding his opinion in support of the motion, he observes that if the liability of the father under the statute of Elizabeth to support his child when unable to support herself, would form a ground of action per se independently of loss of service, the anomaly would follow, that as the father is only liable under the statute when he is of sufficient ability to do so, and as the damages recoverable by the father where he brings the action are confessedly not limited to the actual expenditure of his money, but may be given according to the circumstances of aggravation in the particular case, the right of action to recover compensation would be confined to persons of ability to maintain the daughter, and would be denied to the poorer classes of the community.
In the case of Revill v. Satterfit, the second ease referred to by the revisors, the daughter of the plaintiff had been at service in the family of the defendant’s uncle. Some suspicion having attached to her intercourse with the defendant, she had been removed to another situation, from which she returned to her father’s house. Here she had been in the habit of receiving the defendant and of sitting up with him at late hours of the night after the family had retired to rest. Another daughter of the plaintiff proved the acknowledgment of the defendant that he had seduced her sister, and that he was the father of a child which she had borne. The girl who had been seduced was not introduced as a witness. The counsel for the defendant contended that the case of the plaintiff left so bare of evidence, should be dealt with upon the strict legal principles on which the action was founded; and that the damages should not exceed *735 the value of the services actually lost. He admitted that in most cases of this sort the condition of service was regarded as a mere conveyance to the action. It was the form through which the injury was presented to the court; and having obtained its admission upon legal principles, it brought along with it as parts of itself, all the circumstances of the case. But when the object of seduction was not herself produced, the strongest suspicion attached to the quality of the injury. He contended therefore that the jury ought not to estimate the damages upon the ordinary principles which obtained in cases of the kind. Mr. Baron Wood said that the plaintiff had his right of action for loss of the services of his daughter; a loss which he alleged he had sustained by the seduction of the defendant. It was not necessary to produce the daughter, though the withholding of her was open to observation. In strictness, the action being founded on the loss of service, the damages ought to have reference to the extent of the service. But that an injury of the kind was always complicated with circumstances; and it was difficult to separate one part from the other; and held that it was not necessary to produce the girl as a witness.
In the case of Hewitt v. Prime, the suit was brought by the plaintiff for the seduction of his daughter of the age of seventeen, whilst she was a member of his family. And the suit was brought after the daughter was discovered to be pregnant, but before the birth of the child. Such being the state of facts proved on the trial, the counsel for the defendant moved the court to instruct the jury that to sustain the action it was necessary that the plaintiff should have proved loss, expense or damage before suit brought, in consequence of the seduction. But the judge charged the j ury that the daughter being in her minority, a member of the family of her father, no loss, expense or *736 damage prior to the suit need -be shown. And there being a verdict for the plaintiff, the question was, Whether there should not be a new trial on account of the charge given by the judge at the trial? It will be seen that in this last case cited by the revisors, there'was no question raised as to the relation of master and servant. The daughter was a minor living with her father, a member of his family; and the motion to give such instructions as were asked, implied the concession that nothing was wanting to make out the case but proof of some actual loss of the services of the daughter, resulting from the wrongful act.
Upon this view of the character of the cases to which the revisors refer, and the grounds on which they were decided, it does not seem to me that there can be any serious doubt as to the design which they contemplated in recommending that the rule established in Hewitt v. Prime should by a provision of the Code be adopted as the rule in Virginia. The rule in Hewitt v. Prime goes to the extent of dispensing with proof of actual loss of the services of the daughter, but no further. And I do not think that the recommendation of the revisors shows a purpose to accomplish anything more by the enactment of the statute which they reported to the legislature for its adoption. See 2 Rob. Pr. 562, (new ed.) Showing plainly that such is the view of Mr. Conway Robinson, one of the re-visors, taken in the recent edition of his Practice. It must be conceded, however, that the term employed in the act, loss of service, is sometimes used in a sense which would embrace as well the actual loss of service or inability of the female to render service, as the right of the plaintiff to such service; and if it is apparent from the language of the act, that the term is used in that sense, it would be our duty, I apprehend, so to construe it, though in doing so we should be led *737 to results beyond those which we might infer were in the contemplation of the legislature, from the fact of their having passed the law as it came from the revisors.
The loss of service is the gist of the action, and it may be said, not incorrectly, and in the reports is, frequently, said that a plaintiff has failed to maintain his action, because he has failed to show that he has sustained any loss of service, in cases where the sickness and confinement of the female and birth of her child consequent upon the seduction, show her inability to render service; and the only defect is that the plaintiff has failed to show the relation of master and servant, or his right to the services. Yet, in pleading and in practice there are three constituents of the action, the presence of all of which is essential to its maintenance, viz: the relation of master on the part of the plaintiff to the female, her seduction, and the actual loss of her services as a consequence. This actual loss of service, though frequently spoken of in the text books and in the opinions of judges as a mere fiction or form, had rarely if ever been dispensed with either in England or in this country prior to the decision in Hewitt v. Prime. From the case of Grinnell v. Wells, decided in 1844, we have seen that it is still, or was, at the time of the enactment of the Code, indispensable to the maintenance of the action in England. And in the cases of Martin v. Payne, 9 John. R. 387, Clark v. Fitch, 2 Wend. R. 459, Hornketh v. Barr, 8 Serg. & Rawle 38, which, in opposition to the decision in Dean v. Peel, 5 East’s R. 45, have established in this country the rule, that whilst the daughter is under twenty-one, she will, for the purposes of the action, be regarded as the servant of the father, though not living with him, but away from him, in the family and service of another, except where the father has renounced and abandoned her totally, and devested *738 himself of all right to reclaim her services. In each of these cases the disability of the daughter to perform services, resulting from the act of seduction, was shown; and the legal right of the father to have damages for loss of service, was placed on the ground that the daughter was his servant de jure though not defacto at the time of the injury; and being his servant de jure, the defendant had done an act which deprived the father of his daughter’s services — services which he might have exacted and she might have rendered but for that injury.
It is also worthy to be observed, that in the case of Hewitt v. Prime, Nelson, C. J. in taking the ground that proof of the actual loss of the daughter’s services was not essential, after assigning the reasons stated in the poi'tion of his opinion quoted by the revisors, thought it well to fortify his position by the further argument that the value of her services would be necessarihj diminished by the defilement of her person and corruption of her mind.
Prom this view of the state of the law on the subject when the legislature came to pass the act, it will be seen that an important change in the law would still be effected, and the terms of the act satisfied, by giving to the words in question the restricted meaning contended for by the plaintiff in error.
That this is the true construction, is made still more apparent when we observe the obvious difficulty if not impossibility of giving any effect to that construction which would dispense as well with the necessity of proof of right to the services of the female as of proof of the actual loss of such services. The statute does not in terms confer the right to bring the action on the father or any one else ; and as at the common law neither he nor any other person can maintain the action without showing his right to the services of the female who has been wronged, if the statute is to be *739 construed as dispensing with the proof of such right, we should have the anomaly of an action maintainable without any ascertainment of the person or persons to bring it. And if by a strained inference we might otherwise intend that inasmuch as the action is one more generally used to enable a father to recover exemplary damages for the seduction of his daughter than for any other purpose, the legislature designed by the passage of the act to enable him to recover in cases in which at the common law he would be defeated by want of proof to establish the relation of master, or the right to the services of the daughter, we should still have to encounter objections of a character so serious as to forbid such a construction. For, as was argued by the counsel of the plaintiff in error, the statute does not take away the right of any one to maintain the action who before had it at the common law. And if the statute be construed to give to the father, as such, the right to sue in every case of the seduction of his daughter, the necessary consequence would follow that the defendant might be exposed to two or more recoveries of exemplary damages for the same act. As under such a construction neither loss of service nor right to the services is necessary to the maintenance of the action, no reason is perceived why the father might not maintain the action for the seduction of a married daughter, whose husband had already recovered damages for the injury done to him. Indeed it is now held that exemplary damages may always be allowed in this kind of action, in the discretion of the jury. Ingersoll v. Jones, 5 Barb. Sup. Ct. R. 665. If, therefore, in a case of the seduction of a daughter who has attained her majority, and who has passed from the control and protection of the father, and is at service with another person, we allow the father to maintain his suit, a defendant may be subjected to the double recovery of exemplary da *740 mages, in direct violation,, of the spirit of the rule by which the right of the master to recover such damages is maintained. For in the case just cited the distinction is taken between the case of an action by the master for the beating of his servant and that of an action for the seduction of his servant, in respect to the damages; and it is said that in the case of the assault and battery the servant has an action himself, and may recover exemplary damages; and that to allow such damages to the master would therefore subject the defendant to their payment twice; whilst for the seduction, the servant has no action.
And really I do not perceive any satisfactory answer to the argument of counsel, that if after the daughter has been fully emancipated from all parental control; after the father has parted with all legal interest in her services — all legal right to the comforts of her society and attentions — he may still maintain such a suit — the mother would also be entitled to a like action. And so in respect to the brothers and sisters. In such a state of things the father’s right to the action could only rest on the injury done to his feelings: And no reason is seen why the right of the other members of the family to have their action would not be just as clear. There is no reason for supposing that the mother would be less deeply affected than the father by the loss of a daughter’s virtue and the destruction of the peace and happiness of the domestic circle consequent upon it. A brother might feel just as acutely the wound inflicted on the honor of the family; whilst an unmarried sister just entering upon society, sharing as fully, in all other respects, in the common grief, might have her, sufferings enhanced by the dread of uncharitable doubts and suspicions in respect to her own purity and innocence.
This view of the consequences which seem to me to result from that construction on which the judg *741 meat of the Circuit court is supposed to be founded, coupled with the considerations already adverted to, have led me to the conclusion that the construction contended for by.the plaintiff in error is the true one.
Under the latter construction, cases of an appa rently aggravated character may in some instances go unredressed: And from the amount of damages given by the jury, we infer that in their belief and in the opinion of the Circuit court, who has rendered a judgment in conformity with the verdict, this is a case of that kind. We may regret that we can find no legal ground on which to sustain the action of the court and jury; but I do not think that we are at liberty to break through the forms of the law to reach what we may regard a case of hardship. So long as a daughter is a minor, subject to the father’s control; indeed after she has attained her majority, so long as she lives with him and he has any legal right to command her services, her society and attentions, he has, under the construction I would give to the act, a right to bring his action for her seduction, and to found his claim for damages on the wrongful act, without any proof showing that there has been a failure or inability in the daughter to render him services in consequence of such act. But further than this I do not think the law has yet gone.
When the daughter has arrived to years of discretion, has left the paternal roof, has emancipated herself from all legal control on the part of the father, and become in all regards the mistress of her own conduct and actions, I think the law gives the father no action for her seduction. And as some apology for this supposed defect in the law, it is perhaps worthy of consideration, whether a reason for the failure of the lawgivers to allow an action in such case may not be found in the belief on their part that if in such a state of things the well established virtuous habits and cha *742 racter of the daughter, her own well matured sentiments of female purity and honor, and the discreet conduct and modest deportment which are their outward evidences, do not protect her against the arts of the seducer, no great additional 'safeguard to female virtue, no important additional security for the preservation of the public morals, would be afforded by a law conferring on the father or any one else a right to maintain a suit for her seduction.
Upon the whole, I think that the Circuit court ought to have rendered a judgment sustaining the demurrer to the first count in the declaration, and ought to have given the instructions asked; and that because of the error in these particulars the judgment should be reversed, the verdict set aside, the demurrer to the first count in the declaration sustained, and the cause remanded for a new trial.
The other judges concurred in the opinion of Daniel, J.
Judgment reversed.