# WHEELING.

## Hudkins v. Haskins.

Submitted June 23, 1883—Decided November 24, 1883.

1. An affidavit to obtain an attachment under section 1 of chapter
   106 of the Code of West Virginia must state the *nature* of the
   plaintiff's claim, and the amount which affiant believes the
   plaintiff is justly entitled to recover *in the action*, and also his
   belief that some of the grounds specified in said section exists
   for the attachment, and unless the attachment is sued out on

the first of such grounds, the affiant must state, in his affidavit the *material facts,* relied on by him to show the existence of the *grounds* on which the application for the attachment is based ; and it will not be sufficient if these statements are only recited in the certificate of the notary before whom the affidavit was made, unless it also appears from the affidavit that all these statements were sworn to by the affiant. (p. 652.)

2. A count in a declaration in an action for the seduction of the plaintiff's daughter, is good, notwithstanding it alleges that the defendant "under a faithful promise to marry her debauched the daughter," &c., as such an allegation, will be treated as surplusage. (p. 660.)

3. In an action by a father for the seduction of his daughter it is not necessary to allege or prove any loss of the service of the daughter. (p. 653.)

4. To entitle the father to maintain his action for the seduction of his daughter, who was of full age at the time of the seduction, he must show that she was at that time in his service, so as to constitute in law, and in fact, the relation of master and servant between them. (p. 654.)

5. Where a daughter after she becomes of full age, continues to reside in her father's family, rendering him any of the services usually rendered by a daughter in the family, it will be presumed that the relation of master and servant exists between the father and daughter. (p. 658.)

6. Where such relation of master and servant between the father and daughter is shown to have existed after she has become of full age, such relation will be presumed to continue, until determined by the act of the father, or until the daughter has left the parental roof, emancipated herself from all legal control on the part of her father, and become in all respects the mistress of her own conduct and actions ; and this relation will not be destroyed by a temporary absence from her father's house, coupled with a present purpose on her part of returning to the same. (p. 658.)

Woods, Judge, furnishes the following statement of the case :

William Hudkins on the 30th day of August, 1880, brought his action on the case in the circuit court of Braxton county against Robert J. Haskins, for one thousand dollars damages for the seduction of the plaintiff's daughter and servant, Eliza L. Hudkins. Process was issued returnable to October rules, 1880, and the sheriff on the same day

returned, the same "Executed on the within named R. J. Haskins by delivering an office copy hereof to Robert L. Haskins, a person above the age of sixteen years and a member of the family with whom the said Robert J. Haskins usually resides, and giving information of its purport at his usual place of abode he not being found, on the 30th day of August, 1880." No objection was ever made to the sufficiency of this return.

On the same day the plaintiff filed in the clerk's office of said court, an affidavit in these words:

"STATE OF WEST VIRGINIA,

*"Braxton County, to-wit:*

"This day personally appeared before me, the undersigned, a notary public in and for said county, Eliza L. Hudkins, daughter of William Hudkins, plaintiff in a certain action of trespass on the case against Robert J. Haskins, defendant, in which action one thousand dollars damages is claimed by him, the said William Hudkins, for the seduction of her, the said Eliza L. Hudkins, his daughter, and made oath that she verily believes he, the said William Hudkins, is entitled to recover from the defendant, Robert J. Haskins, the said sum of one thousand dollars damages as aforesaid.

"And the material facts relied upon are, that contrary to his pledges and promises to marry her at a certain fixed and appointed time, to-wit, on the 24th day of June, 1880, he, the said Robert J. Haskins, failed to appear and make good his promises of marriage; and that since then, he so conceals himself that a summons cannot be served upon him. And further, that she and her friends have been informed by his friends, and so believes, that he has left the State, so that a summons cannot be served upon him personally.

"Given under my hand this 10th day of August, 1880.
                                    "A. W. CORLEY,
                              *"N. P. Braxton County."*
and thereupon sued out of said clerk's office an order of attachment against the estate of the defendant, which on the 30th August, 1880, was duly levied on the undivided half of

one hundred and thirty-seven acres of land in said county, belonging to said defendant. The declaration contained two counts, the second in the usual form, alleging damages for loss of service and for expenses incurred in nursing and providing for the daughter during her confinement, &c., and concluding "to the damage of the plaintiff of one thousand dollars." The first count alleged the seduction of the daughter and servant of the plaintiff to have been done by the defendant on the — day of October, 1879, and on divers other days &c., under a faithful promise to marry said daughter on the 24th of June, 1880, and concluded without allegation of damages. The defendant at the August term, 1881, of said court, appeared and demurred to the declaration and to each count thereof, which demurrer the court overruled. He then pleaded not guilty and issue was thereon joined and the cause was continued. At the next term the parties appeared by their attorneys and the defendant moved the court to quash the attachment because of the insufficiency of the affidavit, which motion the court overruled and the defendant excepted on the record. The case was continued from term to term until September term, 1882, when the issue was tried by a jury, who returned a verdict in favor of the plaintiff for five hundred dollars damages, upon which the court on the same day entered up a judgment against the defendant. On the next day the defendant moved the court to set aside the judgment, and also the verdict and grant him a new trial on the grounds that the verdict was contrary to the evidence, which motions were also overruled and the defendant excepted, and the court in the bill of exceptions, certified all the facts proved upon the trial to be as follows:

"The court certifies the following facts proved: That Eliza L. Hudkins about 1876 became acquainted with Robert L. Haskins, the defendant; that he waited on her as her suitor for about three years, at the termination of which time he seduced her under promise of marriage; that in the month of November, 1879, she became pregnant with child by him, which child was born on the 23d day of August, 1880, at her father's house; that Eliza L. Hudkins had always lived at her father's house doing service for him, except that she lived with her sister, Mrs. Nelson McGlauchlin, during

the absence of Nelson McGlauchlin while he was working on the Elk river improvement in the fall of 1879; that the seduction and each act of sexual intercourse, which continued for about six months after conception, occurred at Nelson McGlaughlin's; that she went backwards and forth from her father's to McGlaughlin's at various times other than the time she was staying with her sister in the absence of her husband, Nelson McGlaughlin; that she always went home when her father requested her; that the only time she ever lived away from home, except while she stayed with her sisters, was when she lived in Sutton with John H. Cunningham and Rev. Poling, which was within the last five years; that Eliza L. Hudkins is twenty-six years of age; that she told her father, William Hudkins, that she would always come home whenever they needed her when living away from home, which facts are all the material facts proven." On the same day the court entered an order in said cause directing a special commissioner appointed for the purpose, to sell the undivided half of said one hundred and thirty-seven acres, upon which the attachment was levied, particularly describing it, upon a credit of six, twelve and eighteen months with interest, upon the usual notice.

To this judgment the plaintiff has obtained a writ of error and *supersedeas* to this Court.

*M. T. Frame* for plaintiff in error.

*A. L. Hustead* and *W. E. Haymond* for defendant in error.

WOODS, JUDGE:

It is insisted by the plaintiff in error that the circuit court erred in overruling his motion to quash the attachment and in overruling his motion to set aside the verdict and grant him a new trial, because as he alleged the verdict was contrary to the law and unsupported by the evidence. The proceeding by attachment against the estate of a defendant is purely statutory, exceedingly harsh in its operation, and liable to great abuse, and being unknown to the common law, is to be confined within its statutory limitations, and subject to all of its restrictions. The order of attachment

can only issue, when the prescribed affidavit has been made
and filed with the clerk of the court in which the action or
suit is, or is about to be brought.    This affidavit lies at the
foundation of the proceeding, and without it, the attachment
cannot lawfully issue.    The only authority for issuing the
attachment in this cause is found in the first section of chap-
ter 106 of Code of West Virginia.    It provides that when
any action at law for any of the purposes mentioned in that
chapter is about to be, or is instituted the plaintiff at any
time before judgment, "may have an order of attachment
against the property of the defendant on filing with the clerk
of the court in which action or suit is about to be, or is
brought, his own affidavit or that of some credible person,
stating the nature of the plaintiff's claim, and the amount
the affiant believes the plaintiff is justly entitled to recover
in the action; and also that the affiant believes that some one
or more of the following grounds exist for such attachment."
It is only necessary in this case, to set forth the first three of
them, viz:    First, the defendant, or one of the defendants, is
a foreign corporation, or is a non-resident of this State; or,
Second, that he has left or is about to leave this State, with
intent to defraud his creditors; or, Third, that he so conceals
himself that a summons cannot be served upon him.

It will be observed, that the statute requires that the plain-
tiff or some credible person shall make an affidavit, and this
affidavit must contain certain statements, _and all these_ state-
ments must be sworn to by such plaintiff or credible person,
and unless they be so made and sworn to the clerk has no
authority to issue the order of attachment.    What are these
statements ?    That in an action then brought, or about to be
brought, the plaintiff sets up a claim of some character
against the defendant, upon which he claims a right to re-
cover something in that action.

The statute requires that affiant in his affidavit shall state
the _nature_ of the plaintiff's claim and the amount the affiant
believes the plaintiff is _justly entitled_ to recover in the action,
and also (in this case) that some one or more of the said
(three) grounds exist for such attachment.    The last clause
of said first section further provides, " that unless the attach-
ment is sued out upon the first of such grounds the affiant

shall also state in his affidavit the material facts relied on by him to show the existence of the grounds upon which his application for the attachment is based." By the nineteenth section of said chapter the defendant has the right to make defence to such attachment. If the affidavit contain all the necessary allegations, showing the existence of some one or more of the grounds for such attachment, and also all the material facts relied on by the plaintiff to show the existence of these grounds, the plaintiff may file a plea in abatement denying the truth of *such facts*, and if the issue on such plea be found for the defendant, judgment shall be entered that the attachment be abated. The grounds alleged to exist for such attachment, and the material facts relied on by the plaintiff to *show* the existence of said grounds, must not be confounded with each other; both must be alleged and sworn to, in the affidavit, and if either be omitted, the attachment must be quashed, for without a statement of the material facts relied on to show the existence of the grounds for issuing the attachment it would be impossible for the defendant to deny them or to make his defence thereto.

What facts are verified by the oath of the said Eliza L. Hudkins filed in this cause? It is true the notary certifies, that she, the daughter of William Hudkins, plaintiff in a certain action of trespass in the case against Robert J. Haskins defendant, in which action one thousand dollars damages is claimed for the seduction of her, the said Eliza L. Hudkins, his daughter, appeared before him and made oath—to what? To three facts? No; she swears to *none of them*; and if any or all of them be false she is not morally or legally responsible therefor, for she only swears, that she verily believes he, the said William Hudkins, is entitled to recover from the defendant Haskins the said sum of one thousand dollars. It is not clear from the affidavit what grounds are intended to be alleged as existing for suing out the attachment. The failure of the defendant to perform his promise to marry the affiant is not one of the grounds prescribed by the statute, nor is the action brought for that cause. It is not intended to allege the defendant is a non-resident; we are obliged to conclude, that the only other possible ground intended to be alleged is, that the defendant " so conceals himself, that a summons

cannot be served upon him." In that case the statute requires the affidavit to state the material facts relied on by the plaintiff to prove, that the defendant does so conceal himself. What material facts are alleged in the affidavit, which if true would prove such concealment? Simply, that "affiant and her friends, have been informed by his friends, that the defendant has left the State so that a summons cannot be served upon him personally." She may have been so informed and she and her friends may believe the information to be true, but is the fact true, that he has left the State for that purpose, or for any purpose? If directly alleged to exist, the defendant could deny it by plea and compel plaintiff to prove it, or if he failed to do so, the attachment would be abated. On the trial of such an issue no one would contend, that such fact would be proved, by proving that affiant and her friends had been told by his friends and that she and her friends upon such information believed that he had left the State, so that a summons could not be served upon him personally. The affidavit was clearly insufficient to authorize the attachment, as it failed to state the nature of the plaintiff's claim, or that he was justly entitled to recover any sum in his action and failed to state any material *fact* relied on by the plaintiff, to show that the defendant "so concealed himself that a summons could not be served upon him," and these defects are not cured by the unauthorized recital of their existence made by the notary in the body of said affidavit, as his whole duty consisted in only certifying the facts sworn to by the affiant.

We are of the opinion that the circuit court erred in overruling the defendant's motion to quash said attachment, and in directing a sale of the real estate upon which the same was levied.

It is insisted by the plaintiff in error that the circuit court erred in overruling his motion to set aside the verdict and judgment and grant him a new trial, on the alleged ground that the verdict was unsupported by the law, or the evidence in the cause. These two objections in this cause must stand or fall together, for if the facts proved on the trial, show that the plaintiff had cause of action against the defendant, this Court could not say that the verdict was unwarranted, upon the facts proved.

The law is now well settled, that where the daughter at the time of her seduction is under the age of twenty-one years, and the father then was entitled to her services and attentions the law conclusively presumes that the relation of master and servant exists between them, although at the time of the seduction she may be in the actual service of another, under a contract made by herself, for her own benefit. *Clark* v. *Fitch*, 11 Wend. 459; *Lee* v. *Hodges*, 13 Gratt. 726; *Clem* v. *Holmes*, 33 Gratt. 722; *Riddle* v. *McGinnis*, 22 W. Va. and cases therein cited.

The action on the case by the father for the seduction of his daughter grew out of the relation of master and servant, and the legal ground of the recovery, was the alleged loss of service occasioned by the seduction; but both the alleged relation of master and servant, and the loss of service have long been considered as innocent fictions, which only served to bring the real grievance before the court where damages were allowed not for the loss of services only, but principally for the humiliation and disgrace brought upon the plaintiff's family, and for the mental anguish suffered on account of the ruin of his daughter and the dishonor of his household.

By the common law the plaintiff was obliged to aver and prove the existence of the relation of master and servant between the father and daughter, at the time of the seduction, and also the loss of some service, and its value; but as the relation of master and servant, as well as the services and their value, were but innocent fictions to enable the court to reach the real wrong done—the slightest acts of services, even of the least possible value have been held to be sufficient for this purpose; and now where the daughter is a minor at the time of the seduction, and the father has the legal right to command her services—these facts alone, establish the relation of master and servant, and the loss and value thereof, and are sufficient to enable the father to maintain his action for her seduction.   By the first section of chapter 103 of the Code of West Virginia, it is not necessary to allege or prove any loss of service whatever, but it is still necessary in every case to allege and prove the existence of the relation of master and servant at the time of the seduction.

Where the daughter is a minor, and the father at the time of the seduction is entitled to her attentions and services, the relation of master and servant exists *de jure*—though not *de facto*. In this case, without any loss of service, the father may maintain his action. *Greenwood* v. *Greenwood*, 28 Md. 370; *Martin* v. *Payne*, 9 Johns. 387; 2 Wend. 459; 15 Bar. 280; 11 N. Y. 343; 31 N. Y. 405; *Riddle* v. *McGinnis*, *supra*. It is equally well settled that if the daughter at the time of the seduction is over the age of twenty-one years, but is in fact the servant of her father, he may in like manner maintain his action against her seducer.

But if the daughter be of full age at the time of her seduction, then to authorize the father to maintain his action, she must be in his service, so as to constitute in law and in fact the relation of master and servant between them; and therefore if she be *residing* elsewhere, than in his family when the seduction takes place, his action cannot be sustained, unless it appears, that notwithstanding her residence elsewhere, she was still in his service, and was absent with the intention of returning to his roof. *Bennett* v. *Alcot*, 2 T. Rep. 166; 3 Black. Com. 140 n. 27; 4 Min. Inst. 474.

Where the daughter who is over twenty-one years of age is residing with her father, and his family, at the time of the seduction, proof of the slightest services performed by her for him, although of no pecuniary value, are sufficient to establish the relation of master and servant. *Bennett* v. *Alcott*, *supra*; 2 Greenl. Ev. §§ 573, 576; 9 Johns. 11; *Wendell & Riddle* v. *McGinnis*, *supra*.

The minor daughter, whether living in her father's house, or elsewhere, continues to be his servant *de jure*. When she becomes of full age and continues to reside with him as a member of his family rendering him her usual services, though no longer a servant *de jure*, she will in law and fact continue to be his servant, until the relation is by the act of one or both terminated, which either, at any moment, is at liberty to do; but unless so terminated, this relation as to all the rest of the world continues. It does not lie in the mouth of the seducer to say, that he shall be free from responsibility for his wrongful act, because no binding contract exist between the daughter and her father, whereby she has become

a hired servant.   Her father's house is the natural asylum of the unmarried daughter, and the shield of its protection covers and protects her, notwithstanding she is over twenty-one years of age, until her father compels her to depart from it— or until she has voluntarily left the parental roof, emancipated herself from all legal control on the part of her father, and become in all regards the mistress of her own conduct. When this has in fact occurred, she is no longer his servant, he has lost all authority to require any service at her hands —and has no longer any right to maintain his action for her seduction.   Lee v. Hodges, 13 Gratt. 738; Nicholson v. Stryker, 10 Johns. 115; Mercer v. Wamsly, 5 H. & J. 27.   But it is not every occasional, or accidental absence from her father's house that works this total emancipation from his control, so as thus to deprive her of his paternal protection against the wiles of the seducer; otherwise she would be a prisoner in her father's house, permitted to absent herself from it, only upon peril of forever forfeiting her right to his protection. 4 Min. Inst., supra; 2 Greenl. Ev. § 573; Mame v. Barrett, 6 Esp. 32; Rob. New Pr. vol. 2 p. 557; Holloway v. Abell, 7 C. & P. 528; Sipe v. Eisenlerd, 32 N. Y. 229.

When we remember that the action of trespass and trespass on the case per quod servitium amiset are the only remedies provided by the law to redress the greatest of all injuries to the domestic circle, and, that the tendencies of the courts have been to extend these remedies, and redress the wrong, and that they have uniformly treated the relation of master and servant as well as the loss of services as mere fictions of law to bring the wrong before them for redress, we have no disposition to add any restrictions upon the father's right to maintain his action not already established by the adjudicated cases.

In the case of Bennett v. Alcott, 2 Term. R. 166, the daughter was thirty years of age and at the time of the seduction was living in her father's house, and had been in the habit of rendering him some small services, but no other circumstances appeared from which it could be presumed, that the relation of master and servant existed between them.   This was held sufficient to maintain the father's action for the seduction of his daughter and to support a verdict against the defendant for two hundred pounds sterling.   In Mann v. Barrett, 6 Esp.

32, the plaintiff lived on a farm adjoining that occupied by his son. The daughter who was seduced was living with her brother, managing his house; she was in the habit of going back and forward from her brother's to her father's house, and assisted her father at his house, but slept at her brother's house, and while living with her brother she was debauched by the defendant. It was held, that the father was entitled to maintain his action against the defendant for debauching his daughter. In *Holloway* v. *Abell*, 7 C. & P. 528, the plaintiff owned two farms, seven miles apart. He resided on one and his son and daughter on the other, where the daughter acted as mistress, going and coming when she pleased, and while there was seduced. In that case the father's action against the seducer was maintained. In the case of *Sipe* v. *Eisenlerd*, 32 N. Y. 229, the daughter was twenty-nine years of age and generally resided in her father's family, performing such services as are usual under such circumstances. The defendant was a practicing physician and kept a tavern. Needing help to prepare for large entertainments at his tavern at Christmas and New Years, 1857, he induced her to leave her father's house, with his consent, to stay at the tavern and assist in preparing the entertainments and putting the house in order afterwards. She remained in defendant's tavern eleven days, during which time he seduced her, the intercourse taking place five days before she returned to her father's house. In this case the father's action for the seduction of his daughter was sustained by the court of appeals of New York, although there was no evidence of any express contract for service between her and her father. Denio, Chief Justice, delivering the opinion of the court in that case says: "I lay out of view, for the moment, the circumstance that she was at the defendant's house at the time of the intercourse, assuming that to have been accidental, and not of such a character as to interrupt the relation which he habitually sustained towards the plaintiff. As father, he had no right to claim her services against her will, and he was under no legal obligation to provide for her support. But by a tacit understanding such as almost always exists in such cases, she continued to perform such services in his household as she was capable of and such as were required; and on his

part he supplied her with food, clothing and lodging. Either party could put an end to the arrangement at pleasure, but at the time of the seduction neither had elected to do so, and it then existed in its full force. Although the daughter could have broken it off, third persons had no such right, but were bound to respect it; and any illegal act, by which the right of the father, such as it was, to her services was interfered with to his detriment was a legal wrong, for which the law affords redress." The court held, that the daughter's absence from home in that case was merely temporary, and in the nature of a visit, and did not at all affect the relation of master and servant, which subsisted between the plaintiff and his daughter. In the case of *Nicholson* v. *Stryker*, 10 Johns. 115, where the plaintiff's action was not sustained, the daughter was also twenty-nine years old, but she was not in the actual service of the father when the seduction took place, and therefore the relation of master and servant did not then exist between them, and so the supreme court of judication of New York in that case held. In *Mercer* v. *Wamsley*, 5 H. & J. (Md.) R. 27, the father's action was not sustained, for it appeared that at the time of the seduction the daughter was upwards of twenty-one years of age, living at the house of the defendant, where she had been living for more than a year before she was debauched, doing different kinds of work and attending to the affairs of the defendant's family generally, and she was not therefore in the service of her father, and therefore the relation of master and servant did not then exist between them. The plaintiff in error relies upon the case of *Lee* v. *Hodges*, 13 Gratt. 738, to support his pretensions in this case. An examination of the circumstances disclosed by the record in that case, shows that the court of appeals of Virginia did not announce any new principle, but merely declared the law to be as we have stated it, viz : that where the daughter at the time of the seduction is over the age of twenty-one years, she must be shown to have been in the service of the father, before he can maintain his action. In that case the defendant's daughter at the time of her seduction was over twenty-three years of age, living with the defendant, away from her father's house, under a contract made by herself with the defendant after she was of full age,

for her own exclusive benefit, binding herself to render service to the defendant for a period of twelve months, during which period she was seduced by him, but it did not even appear that she was living with her father at the time her said contract was made, or that she had ever lived with him at any time after she became of full age. By these facts it did not appear that the daughter, at the time of her seduction was, or at any time after she became of full age had been in the service of her father, and therefore the relation of master and servant did not at that time subsist between them, but on the contrary it clearly appeared, that at the time of her seduction she was actually the servant of the defendant. Daniels, Judge, delivering the opinion of the court in that case, declared "that where the daughter has arrived to years of discretion, has left the parental roof, has emancipated herself from all legal control on the part of the father and become in all regards the mistress of her own conduct and actions, I think the law gives the father no action for her seduction."

We are therefore of the opinion that, where the daughter after she became of full age resided in her father's family and rendered to him any of the services usually rendered by a daughter in the family from which the relation of master and servant would be presumed to exist between them such relation must be presumed to continue until terminated by the father, or until the daughter has left the parental roof, emancipated herself from all legal control on the part of her father and become in all respects the mistress of her own conduct and actions, and that this relation of master and servant between the father and daughter is not destroyed by a temporary absence from her father's house with the present intention on her part of returning to the same.

It only remains to apply the principles of law just announced to the facts of the case under consideration. They are few and simple. They show the plaintiff's daughter had lived at home with him all her life, except that some time within five years, before the 2d of September, 1882, she had lived in Sutton with a Mr. Cunningham, and with Rev. Poling, and excepting the time she *stayed with her sisters*; that she had always lived at her father's house (except as be-

fore stated) doing service for him; that she lived with her married sister Mrs. Nelson McGlaughlin while her husband in the fall of 1879 was working on the Elk river improvement; that the seduction and each act of sexual intercourse which was continued for about six months after conception, occurred at Nelson McGlaughlin's, and that she went backwards and forth from her father's to McGlaughlin's at various other times than the time she was staying with her sister in the absence of her husband Nelson McGlaughlin, that she always went home when her father requested her, and that at the time of the trial in the circuit court she was twenty-six years of age.     These facts show that after the daughter was twenty-one years of age, she continued until some time between the beginning of September and the middle of November, 1879, when she must have been between twenty-three and twenty-four years of age, to live at her father's house *doing service for him*, and that about this time she became pregnant with child by the defendant.     From the time she became of full age until the time she went *to stay* with her sister in the absence of all proof to the contrary—the relation of master and servant existed between her and her father, and there is nothing in the facts proved to warrant us to believe, that the daughter, at the time she went to stay with her sister had been banished by her father from his home, or that she, n going to stay with her sister during the absence of her husband, had left the parental roof, emancipated herself from all legal control on the part of her father, and become in all respects the mistress of her own conduct and actions.     As there is no evidence to show how long she stayed with her sister, whether a week or a month, whether she was hired there as a servant, or entertained as a visitor, and as the proof is she *stayed* with her sister during the absence of her husband, the natural, reasonable conclusion is that she was there temporarily as a visitor, with present intention of returning to her father's home as soon as her sister's husband should return.     Neither do the facts proved show that either the seduction, or any subsequent act of sexual intercourse with defendant took place during the time she *stayed* with her sister in the absence of her husband; all the facts proved do show, is that every act of sexual intercourse occurred at

her sister's house, but the number of these acts and whether
the same were committed before or after she went to stay
with her sister, nowhere appears among the facts proved. If
it be insisted that it is probable, that the seduction occurred
during her stay with her sister, it will be a sufficient answer
to say we are dealing with facts proved, and not with proba-
bilities which do not appear. But if it had been proved that
such was the fact, it could not change the result, for tempor-
ary absence, would not destroy the relation of master and
servant subsisting between her and her father. But as the
facts proved show that the daughter went backwards and
forth from her father's to Mrs. McGlaughlin's at various times,
other than the time she was *staying* with her sister in the
absence of her husband, every act of sexual intercourse may
have taken place during these various other casual visits to
her sister's house. We are therefore further of opinion, that
the verdict of the jury upon the facts proved was not con-
trary to the law, and that the same was warranted by the
evidence, and the circuit court did not err in overruling the
defendant's motion to set aside said judgment and verdict
and grant him a new trial. Neither did the circuit court err
in overruling the defendant's demurrer to the plaintiff's
declaration and each count thereof. The court of appeals of
Virginia in- *White* v. *Campbell,* reported in 13 Gratt. 573,
having decided that in action for the seduction of the plain-
tiff's daughter he may, to enhance the damages, prove that
the defendant promised to marry her, and by means of said
promise had succeeded in debauching her, the declaration in
this case was not vitiated by alleging that the seduction was
accomplished under a solemn promise to marry the daughter.
Such an allegation will be treated as surplusage, as that fact
can be proved on the trial as well without as with said alle-
gation.

We are therefore further of opinion that so much of the
judgment of the circuit court of Braxton county as overruled
the defendant's motion to quash the order of attach-
ment, and as directs the sale of the undivided half inter-
est in the one hundred and thirty-seven acres of land upon
which the attachment was levied be wholly reversed and
annulled, and that the judgment in all other respects be

affirmed. And this Court proceeding to render such judgment as the said circuit court ought to have rendered, it is considered that the order of attachment be quashed, and the order of sale entered in said cause directing the sale of said moiety of the one hundred and thirty-seven acres of land be wholly reversed and set aside.

And it is further considered that the plaintiff in error recover against the defendant in error his costs by him about the prosecution of his writ of error and *supersedeas* in this Court expended.

The Other Judges Concurred.

Affirmed in Part.    Reversed in Part.